**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard CARROLL, Defendant–Appellant.**

No. 93–5030.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 13, 1993.

Decided June 22, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 26, 1994.

Daniel A. Clancy, U.S. Atty., Memphis, TN, Leigh Grinalds, Asst. U.S. Atty., Jackson, TN (briefed), for plaintiff-appellee.

Hugh Harvey, Hardee & Martin, Jackson, TN (briefed), for defendant-appellant.

Before: MARTIN and JONES, Circuit Judges; and WEBER, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Appellant Richard Carroll appeals his conviction for possession and distribution of cocaine, alleging that:

(1) the court erred by failing to instruct the jury to disregard improper remarks by the prosecutor;

(2) the court erred by not bringing the matter to trial within the required time limit;

(3) the court erred by determining that Carroll's sentencing range was within criminal history two; and

(4) the court erred by not producing witness interview notes for Appellant's inspection.

The second, third, and fourth allegations are entirely meritless. However, the issue raised in the first allegation merits an extended discussion. We have developed at least three different approaches to this issue, at least one of which is inconsistent with the other two. For this reason, we offer an in-depth analysis so as to clarify our doctrine on

[*] The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

prosecutorial misconduct in closing argument. It turns out that, by failing to admonish the jury to disregard the prosecutor's improper remarks at closing argument, the trial court committed reversible error. Therefore, we reverse Carroll's conviction and remand for a new trial.

## I. Facts

Appellant was indicted for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The trial was continued three times, first upon a motion by Appellant, and the next two times upon motion by the government due to the unavailability of a material government witness, Robin Patrick, for medical reasons. For purposes of measuring the time until trial, the court did not count the period in which the continuances were pending. Before the jury was impaneled, Appellant moved for a dismissal under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.; this motion was denied.

At trial, Robin Patrick testified that she had a plea agreement with the government according to which she would receive a lesser sentence in exchange for her truthful testimony. She further testified that Appellant

had provided cocaine to her before Appellant met her husband, and that she set up deals between Appellant and her husband to enable her husband to purchase more cocaine from Appellant.

Her husband, Richard David Patrick, Jr., testified that he, too, had an agreement with the government according to which he would receive a lesser sentence in return for his truthful testimony. He further testified that his wife set up a cocaine deal between Appellant and himself. Other witnesses identified the cocaine that Appellant sold to the Patricks.

At closing argument, the prosecutor stressed that the Patricks' plea agreements provided that any lies or half-truths on the part of the witnesses would void the agreements, and he declared that if Richard Patrick lied, he would lose the benefit of their plea agreement.[1] Appellant objected, and the court sustained, ruling that the prosecutor could comment on what the agreement says, but could not tell what the government would or would not do if the witness did not tell the truth. Moments later, the prosecutor made a very similar point with regard to Robin Patrick.[2] There was no objection at that time. During his rebuttal, the prosecutor reiterated these points.[3] Again, Appel-

---

1. In relevant part, the prosecutor argued as follows:

   [A]ny half-truths, withholding of information, falsehoods or perjury on the part of Mr. Patrick will automatically void this agreement. Mr. Patrick does not want to stay in jail any longer than he has to.... And if the government finds that Mr. Patrick has lied, that's exactly what's going to happen.

   R. 35–2 at 276 (Trial Transcript, Vol. II, October 14, 1992).

2. In relevant part, the prosecutor argued as follows:

   Robin Patrick has already pled guilty. She has not been sentenced. She's facing ten to fifteen years in the penitentiary. If she comes in here and she tells the truth, cooperates fully, the government may, meaning me, make a 5K1 motion, which allows the judge to sentence her ... below the ten to fifteen years.... [I]f she comes in here and lies, that agreement is void. If she comes in here and gets on this witness stand and the · judge believes she lied, she's jeopardizing herself further....

   *Id.* at 278. Concluding this line of reasoning, the prosecutor stated:

I submit to you that Robin and Ritchie Patrick are credible witnesses. I submit to you that no person would jeopardize themselves with this agreement to do anything but tell the truth. *Id.* at 279. Interestingly, Appellant did not cite to page 279 in his brief, nor did he include page 279 in the joint appendix.

3. During the prosecutor's rebuttal to defense counsel Mr. Harvey's closing argument, the prosecutor argued as follows:

   Mr. Harvey tells you that [the Patricks'] testimony is conditioned on their testimony against Mr. Carroll and getting Mr. Carroll.... Did you hear anybody testify to that? Did you hear any evidence that came from the witness stand that says this [plea agreement] is to get Mr. Carroll? What their deal is, ladies and gentlemen, is to tell the truth anytime that they're put in front of a law enforcement officer, in front of a judge, in front of a jury.

   He says that Mrs. Robin Patrick wants a deal.... She doesn't want to spend any more time than she's going to have to, just like Richie [Patrick] doesn't want to spend any more time than he has to. Well, what is the one thing that will keep them from doing any more time than necessary?

lant objected, but this time the court overruled the objection, saying that the agreement is in evidence and that the statement to which Appellant objected was "a proper comment on the evidence." R. 35–2 at 281.

The jury found Appellant guilty on both counts. At the disposition proceedings, based upon a prior Florida conspiracy to import marijuana conviction, the court found that Appellant's sentencing range fell within criminal history category two. This appeal followed.

## II. Discussion

### A. Improper Remarks by Prosecutor

■ The first issue on appeal involves a challenge to the district court's denial of Appellant's motion for a mistrial. "We review the denial of a motion for mistrial for an abuse of discretion." *United States v. Chambers,* 944 F.2d 1253, 1263 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992); *United States v. Atisha,* 804 F.2d 920, 926 (6th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).[4] An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *In re Benedectin,* 857 F.2d 290, 307 (6th Cir. 1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 156–57 (6th Cir.1988). The first issue also involves improper comments made by the prosecutor without objection from Appellant. These we review only for plain error. *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

> [Defense counsel objects at this point, and the objection is overruled.]
> The truth. That's what this [plea agreement] represents, for both Richie and Robin.
> *Id.* at 280–81.

4. *But cf. United States v. Clark,* 982 F.2d 965, 968 (6th Cir.1993) ("Whether the government's closing argument amounted to prosecutorial misconduct and whether the argument rendered the trial 'fundamentally unfair' are mixed questions of law and fact," subject to *de novo* review).

"The plain error doctrine mandates reversal 'only in exceptional circumstances' and only where the error is so plain that 'the trial judge and prosecutor were derelict in countenancing it.'" *United States v. Slone,* 833 F.2d 595, 598 (6th Cir.1987) (quoting *United States v. Mendez–Ortiz,* 810 F.2d 76, 78 (6th Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986); *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).

Appellant contends that during the prosecutor's closing remarks, "he improperly vouched for the credibility of the Government's witnesses, put the prestige of the Government behind them, and commented on evidence not before the jury." Appellant's Br. at 6. We find that the record supports this allegation.

Appellant further contends that the court erred by not granting a mistrial on the basis of the prosecutor's improper remarks. Because we have developed mutually inconsistent approaches for determining whether this sort of prosecutorial misconduct warrants a mistrial, to properly resolve the issue, we must first explore these various approaches.

### 1. The Standard for Determining When a Prosecutor's Improper Comments Constitute Reversible Error

■ Since 1976, the Sixth Circuit has applied at least three different tests for determining whether improper remarks by a prosecutor during closing arguments warrant a new trial. To make matters even more confusing, all three tests have been applied within the past two years.[5]

5. More confusing still, in some cases we did not apply any of the three tests. Instead, we applied one of two standards that, without further elucidation, are not detailed enough to rise to the level of being "tests." *See, e.g., United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir.1988) ("Improprieties in counsel's argument to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant and any resulting prejudice is not neutralized by the court's instructions.") (quoting *United States v. Flake,* 746 F.2d 535, 542 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360

The first of these tests was introduced in *United States v. Leon*, 534 F.2d 667, 678–683 (6th Cir.1976). The court began its analysis with an "oft-repeated" quote from the United States Supreme Court that stresses the importance of the issue:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 679 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). The court proceeded to establish a two-step approach; first, it determines whether the prosecutor's remarks were improper, and second it determines whether the error was harmless. As to the second step, the court held that a reviewing court will consider the following four factors:

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of

the competent proofs introduced to establish the guilt of the accused.

*Id.* Another factor that is relevant is whether the trial court gave the jury a "cautionary instruction designed to overcome or to dissipate any prejudice that may have been caused." *Id.* Presumably, this factor is encompassed within the first factor, the tendency of the remark to mislead the jury or to prejudice the accused. The *Leon* court applied this "test" to the prosecutor's remarks, and concluded that the prosecutor deliberately injected inadmissible, prejudicial remarks into his closing argument, that the remarks may have affected the jury, that the trial court failed to give an appropriate cautionary instruction, and that the evidence against the defendant was not overwhelming. Therefore, the court remanded for a new trial.

The second test was introduced in *United States v. Bess*, 593 F.2d 749, 753–57 (6th Cir.1979). *Bess* was a close case in which credibility was the key issue. *Id.* at 753. The prosecutor declared in his closing argument that "[i]f the United States did not believe the defendant was guilty ... the case ... would never have been presented to you in the first place." He continued, "I believe beyond a reasonable doubt that the defendant" was guilty. *Id.* The court once again included in its analysis the passage from *Berger* quoted above. It found the prosecutor's remarks "astonishing," "egregious," and "doubly inexcusable" insofar as they were made by a prosecutor whose obligation is to be impartial and whose interest should be in justice rather than winning. *Id.* at 753–54 (citing *Berger*, 295 U.S. at 88, 55 S.Ct. at 633). The statements violated "the established rule that the personal opinion of counsel has no place at trial." *Id.* at 754. The court reviewed some of the reasons for this

(1985)); *United States v. Moreno*, 899 F.2d 465, 468 (6th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 1504, 117 L.Ed.2d 643 (1992) ("In order for [prosecutorial misconduct] to warrant reversal, the comments must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). Both of these standards have also been applied more than once within the last few years. *See, e.g., United States v. Farley*, 2 F.3d 645, 656 (6th Cir.) (applying *Ashworth* standard), *cert. denied,* —

U.S. —, 114 S.Ct. 649, 126 L.Ed.2d 607 (1993); *United States v. Sivils*, 960 F.2d 587, 592 (6th Cir.) (applying *Moreno* standard), *cert. denied,* — U.S. —, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992); *United States v. Sturman*, 951 F.2d 1466, 1477 (6th Cir.1991) (applying *Moreno* standard), *cert. denied,* — U.S. —, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992); *United States v. Solivan*, 937 F.2d 1146, 1156–57 (6th Cir.1991) (applying *Ashworth* standard). Both of these standards are vague enough as to be fully consistent with either of the three tests described herein.

rule: that statements of personal belief on the part of a prosecutor may have a "devastating impact" on a jury; that these statements may infringe upon the jury's role as factfinder and determiner of guilt or innocence; that they amount to inadmissible and highly prejudicial evidence that is not presented under oath and is not subject to cross-examination; and that permitting such statements would improperly favor better-known or unscrupulous lawyers, and would disfavor counsel who omitted such positive assertions. *Id.* at 755.

Like the *Leon* court, the *Bess* court held that a two-step approach was required; allowing a prosecutor's personal beliefs to taint a closing argument is ordinarily "error," but it is not *per se* reversible error. *Id.* at 756–57. The court held that, more commonly, once a prosecutor's remarks are found to be improper, "the complained-of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is over-whelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." [6] *Id.* at 757. The court stressed that, more often than not, prosecutorial misconduct will not be reversible under this test, and that it was intended to have only "minimal effect on appellate review." *Id.* Nevertheless, the court expressed that it intended to create a "precise rule" so as to "maximize opportunity for curative steps at the trial level." *Id.; see also id.* n. 10 ("We reiterate that under many circumstances, this type of prosecutorial error will not be prejudicial. We write to draw the line as clearly as possible to encourage proper argument and alert both opposing counsel and trial judges so that corrective measures can

be taken on the spot."). Applying this standard to the remarks at issue in *Bess,* the court found that the prosecutor's comments were improper, the defendant promptly objected, the trial judge did not give a curative admonishment, and the case was otherwise close; consequently, the court remanded for a new trial. *Id.*

*Bess* and *Leon* can and should be construed in a way that makes them mutually consistent. Both require a two step approach; first we determine whether a prosecutor's remarks were improper, and then we determine whether the impropriety amounts to reversible error. Regarding the second step, the *Leon* test involves four factors:

(1) whether the remarks tended to mislead the jury or to prejudice the accused;

(2) whether they were isolated or extensive;

(3) whether they were deliberately or accidentally placed before the jury; and

(4) the strength of the evidence against the accused.

The first factor includes consideration of whether the trial judge gave an appropriate cautionary instruction to the jury. 534 F.2d at 679. *Leon* does not explain how these factors are to be balanced against one another. The second step of the *Bess* test involves three factors, some of which overlap with the *Leon* factors:

A reviewing court considering improper prosecutorial remarks that are not flagrant is to remand for a new trial if:

(1) proof of defendant's guilt is not over-whelming, *and*

(2) defense counsel objected, *and*

---

**6.** As written, this standard is ambiguous due to the *Bess* court's use of the expression "and/or". It is clear that, when the prosecutor's expression of belief is not flagrant, there are three factors to apply: (1) whether proof of guilt is overwhelming; (2) whether defense counsel objects; and (3) whether the trial judge steps in and admonishes the jury. The court did not make it clear, however, whether a new trial is called for if any one of these factors does not apply, or whether a new trial is only called for if all three factors do not apply. The latter alternative is the better interpretation. Where the error is not flagrant, reversal is inappropriate if *either* proof of defendant's guilt is overwhelming, *or* defense counsel failed

to object to the error, *or* if the trial court cured the error with an admonishment to the jury.

The *Bess* court was unclear as to what standard to apply when the complained-of conduct is flagrant. Our precedents make it clear that prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it. *Young,* 470 U.S. at 16, 105 S.Ct. at 1046–47; *Morrow,* 977 F.2d at 229; *Slone,* 833 F.2d at 598. *Bess* left open the possibility that flagrant prosecutorial misconduct, even if it does not rise to the level of plain error, may sometimes be reversible regardless of the interplay of the three factors discussed above.

(3) the trial court failed to cure the error with an admonishment to the jury.

593 F.2d at 757; *see supra* note 6. *Bess* does not define "flagrant," nor does it instruct what standard one is to apply to flagrantly improper prosecutorial remarks. *See supra* note 6. If we regard the first three *Leon* factors as elucidating the concept of "flagrancy," then the *Bess* test is simply a logical extension of *Leon* that instructs how the four *Leon* factors are to be weighed in situations in which the error is not flagrant.

We introduced a third "test" in *United States v. Thomas,* 728 F.2d 313, 319–20 (6th Cir.1984). In *Thomas,* we considered several instances of prosecutorial misconduct, at least some of which appeared to be expressions of the prosecutor's personal beliefs about the defendant.[7] *Thomas,* too, began its analysis with the *Berger* quote. Although we cited to *Bess* briefly, we did not use the *Bess* test for determining whether the improprieties warranted a new trial. Rather, we adopted a standard from the Fifth Circuit: "To warrant a new trial, however, prosecutorial misconduct 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Id.* at 320 (quoting *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied sub nom., Bella v. United States,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *United States v. Blevins,* 555 F.2d 1236, 1240 (5th Cir.1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978)). We concluded that "[i]n light of the relatively strong evidence of guilt, and the trial court's curative instruc-

tions to the jury, we reject the contention that the prosecutor's misconduct in this case necessitated a new trial." *Id.* We now recognize that the standard we introduced in *Thomas*—that reversal is warranted only when the misconduct at issue is so pronounced and persistent that it permeates the entire trial—amounts to an unfortunate retreat from our *Leon* and *Bess* standards. Where prosecutorial misconduct is so persistent and permeating that it fails the *Thomas* test, it will, of course, be reversible under *Leon* and *Bess* as well, but an isolated remark could be reversible error under *Leon* and *Bess,* yet not be sufficiently "persistent" and "permeating" to warrant reversal under *Thomas.* For instance, a non-persistent expression of a prosecutor's personal belief would still constitute reversible error under *Bess* where the proof of guilt is not overwhelming, the defense counsel objected to the comments, and the trial judge failed to give a curative admonishment to the jury. 593 F.2d at 757; *see supra* note 6. Furthermore, the *Thomas* standard elevates the importance of just one of the *Leon* factors—that of whether the remarks were isolated—over the other three. This is a shortcoming. *See, e.g., United States v. Solivan,* 937 F.2d 1146, 1150 (6th Cir.1991) ("There are instances where a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated.").

All three of these approaches are still in frequent use.[8] In most (but not all) of these

**7.** There were six acts of alleged misconduct: (1) that a defendant was escorted by marshalls in the jury's presence; (2) that, while questioning a defendant, the prosecutor waved a piece of paper not in evidence, suggesting that the paper intimated that the prosecutor had proof of a fact not in evidence; (3) that the prosecutor questioned a defendant about whether he had threatened his lawyer, who was not available to testify; (4) that, in summation, the prosecutor remarked that a defendant had been trying to stare down the government's witnesses—"It's a nice old trick, trying to stare them down, trying to threaten them"; (5) that, in summation, the prosecution hinted that a defendant had underworld connections; and (6) that, in summation, the prosecutor referred to the President of the Teamster's Union as defendant's "friend." We did not discuss these six acts individually, but our discussion

assumed that at least some of these acts were improper. *Thomas,* 728 F.2d at 319–20.

**8.** *See, e.g., United States v. Payne,* 2 F.3d 706, 711–12 (6th Cir.1993) (per curiam) (applying *Leon* and *Thomas* tests, but citing *Bess* with approval); *United States v. Dandy,* 998 F.2d 1344, 1351–53 (6th Cir.1993) (applying *Thomas* test, but considering *Leon* factors, and citing *Bess* with approval); *United States v. Jackson,* 990 F.2d 251, 255 (6th Cir.1993) (applying *Thomas* test); *United States v. Roberts,* 986 F.2d 1026, 1031–32 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 271, 126 L.Ed.2d 222 (1993) (applying both *Bess* and *Thomas* tests); *United States v. August,* 984 F.2d 705, 714–15 (6th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993) (applying *Leon* test); *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.

cases, the end result would probably have been the same regardless of which test was used. Nevertheless, we find it necessary to clarify our doctrine regarding when prosecutorial misconduct in a closing argument constitutes reversible error for three reasons. First, the use of three different standards is confusing both for lower courts and for litigants. Second, even if everyone usually reaches the same net result, the process of reaching this result is more difficult when our doctrine is so murky. Third, and most important, situations sometimes arise, though perhaps only infrequently, in which the choice of doctrine determines the result. One very important example of this is found in the case of *Solivan,* in which isolated remarks by the prosecutor were so prejudicial that a new trial was necessary. 937 F.2d at 1157. Had the panel applied the *Thomas* test, it could not have reached this result. The court made this manifestly clear when it held:

> There are instances where a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. *See Pierce v. United States,* 86 F.2d 949 (6th Cir.1936). We realize that such instances may be rare, but we believe this case exemplifies a single misstep so destructive to defendant's right to a fair trial that it constitutes reversible error.

*Id.* at 1150. It turns out that the instant case presents a second example.

Just last year, the *en banc* court expressly applied the *Bess* test when we considered the issue of prosecutorial misconduct in a closing argument in *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992). In light of this fact, and for the reasons stated in *Bess,* not only will we apply the *Bess* approach in the present case, but we also believe that *Bess*

ought to be used in all subsequent cases involving non-flagrant improper prosecutorial remarks. We will also use the factors introduced in *Leon* to elucidate the concept of "flagrancy" when applying the *Bess* test.

### 2. The Prosecutor's Remarks in the Present Case Were Improper

Under the *Bess* approach, our first task is to determine whether the prosecutor's remarks in the present case were improper. In *United States v. Krebs,* 788 F.2d 1166, 1176 (6th Cir.1986), *cert. denied,* 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986), the prosecutor made the following statements in her closing argument: "I want to suggest to you that in this trial testimony [the witness] was telling the truth.... Basically, she had no reason to lie." Even though we recognized that "I suggest" or "I submit" is not equivalent to "I believe", we found that "the effect of the two statements taken together can be reasonably construed to be based on personal belief." *Id.* at 1176–77 (citing *Bess* ). We not only found that this constituted misconduct calling for the trial court to take corrective measures, but we also characterized the prosecutor's conduct as "inexcusable." *Id.* at 1177.[9]

Similarly, in *United States v. Dandy,* 998 F.2d 1344, 1353 (6th Cir.1993) (citing *Bess* ), we held: "It was improper for the prosecutor to state [in his closing argument] that [a witness] is honest. Such a statement conveys a conviction of personal belief regarding the witness's veracity." The error might have been reversible had the trial court not immediately instructed the jury that all assertions are to be made from the evidence. *See also United States v. Hart,* 640 F.2d 856, 858–59 (6th Cir.) (holding that various expressions of personal belief by the prosecutor in closing argument were improper, warrant-

---

1992) (en banc) (applying *Bess* test), *cert. denied,* — U.S. —, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Warner,* 971 F.2d 1189, 1205 (6th Cir.1992) (applying *Thomas* test); *United States v. Driscoll,* 970 F.2d 1472, 1484–85 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993) (applying *Leon* test); *United States v. Chambers,* 944 F.2d 1253, 1272 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992) (applying *Leon* test); *United States v.*

*Solivan,* 937 F.2d 1146, 1156–57 (6th Cir.1991) (applying *Ashworth* standard, but citing *Bess* with approval).

**9.** Ultimately, the *Krebs* court found that, in light of the substantial evidence of guilt and the trial court's efforts "to take corrective measures to eliminate the resulting prejudice," the misconduct did not justify reversal. 788 F.2d at 1177.

ing admonishment by the trial court), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2334, 68 L.Ed.2d 853 (1981).

The Ninth Circuit's treatment of similar remarks by prosecutors is instructive. In *United States v. Shaw,* 829 F.2d 714, 717 (9th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988), where the prosecutor, in his opening statement, said of his witness, "*as long as he is truthful we will present his truthful cooperation* to the local prosecutor," the court held:

> The statement does not explicitly refer to any extra-record facts.... Yet the emphasized words necessarily imply that the prosecutor has some method of determining whether the witness's testimony is truthful, so that it will know whether to present the witness's "truthful cooperation" to the local authorities. "The unspoken message is that the prosecutor knows what the truth is and is assuring its revelation." ... In our view, the statement constitutes improper vouching.

*Id.* (quoting *United States v. Roberts,* 618 F.2d 530, 536 (9th Cir.1980)); *see also United States v. Necoechea,* 986 F.2d 1273, 1278–79 (9th Cir.1993).

In *Roberts,* 618 F.2d at 536, the Ninth Circuit adopted a powerful argument advanced by Judge Friendly in *United States v. Arroyo–Angulo,* 580 F.2d 1137, 1149–50 (2d Cir.) (Friendly, J., concurring), *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978). At issue was a closing argument remarkably like the one at issue in the present case. *See id.* at 1149. Judge Friendly pointed out that the prosecutor's statements suggested that plea agreements imply truthfulness on the part of the government witness:

> Such remarks are prosecutorial overkill. They inevitably give jurors the impression that the prosecutor is carefully monitoring the testimony of the cooperating witness to make sure that the latter is not stretching the facts—something the prosecutor usually is quite unable to do.... If proper objection had been made to the summation, the judge should have sustained it; if matters had gone too far to make a striking of the remarks an effective cure, the judge should have instructed that the promise in the cooperation agreement adds little to the truth-telling obligation imposed by the oath; that the prosecutor often has no way of knowing whether the witness is telling the truth or not; that the books are not filled with perjury indictments of Government witnesses who have gone beyond the facts; and that an acquittal would not mean that as a matter of course the Government would seek such an indictment or even fail to make its promised recommendation of leniency. If prosecutors know that such instructions will be given, they will hardly be tempted to the excesses committed here.

*Id.* at 1150 (Friendly, J., concurring), *quoted in Roberts,* 618 F.2d at 536.

Along similar lines, in *United States v. Smith,* 962 F.2d 923, 933–34 (9th Cir.1992), the court explained:

> By assuring the jury that Brown [the government's witness] could not just "get up here and say whatever he wanted to say" because he would prosecute him for perjury if he did so, the prosecutor was in fact commenting on Brown's actual testimony. Those remarks made it clear that no such prosecution of Brown was intended. The conclusion that followed inexorably from the remarks was that in the prosecutor's opinion, Brown's testimony was true.
>
> . . .
>
> Finally, [the prosecutor] stated: "[I]f I did anything wrong in this trial I wouldn't be here. The court wouldn't allow that to happen."
>
> . . .
>
> [T]he prosecutor's statement that the court wouldn't allow him to do anything wrong was also clearly improper. That statement, in effect, attributed to the court some independent knowledge regarding the government's decision to prosecute Smith and its subsequent conduct of the trial. Moreover, it suggested to the jury that the court also was satisfied as to the truth of Brown's testimony. Just as the prosecutor may not take advantage of his special role as representative of the sovereign to imply that the government's investigatory apparatus is satisfied of the defendant's guilt, even more so may he not abuse his position and his obligation to see

justice done by imputing such satisfaction to the court.

▪ In the present case, the prosecutor blatantly implied that the Patrick's plea agreements ensured that the witnesses were truthful; the prosecutor did not give the jury any inkling that the government has no independent means of discerning truthfulness. Further, the prosecutor placed the prestige of the government, and even of the court, behind the credibility of the Patricks, by stating that, if the government or the judge did not believe that the witnesses were being truthful, the witnesses would be in jeopardy. This implied to the jury that the government and the court were satisfied that the witnesses were truthful. This constitutes improper vouching.

Some of the prosecutor's remarks in the closing argument of the present case are no different from the remarks at issue in *Krebs*. Immediately after declaring that the Patricks had no reason to lie, the prosecutor stated, "I submit to you that Robin and Richie Patrick are credible witnesses." R. 35–2 at 276–79 (quoted *supra* notes 1–2). As per *Krebs*, this was inexcusable. *See* 788 F.2d at 1177. However, Appellant did not object to this particular statement.

Appellant did object at two other points during the prosecutor's closing argument. The Government admits that one of the prosecutor's other remarks "inadvertently" stated a fact not in evidence.[10] The trial court sustained an objection to this one remark. However, a later remark to which Appellant objected was equivalent to the earlier objectionable remark, yet the trial court overruled the later objection.[11] In both of these remarks, the prosecutor implied that the Gov-

ernment would somehow be able to divine whether the Patricks were lying and would punish them accordingly. Therefore, the trial court erred by failing to sustain Appellant's second objection to the argument, and by failing to give a prompt and appropriate curative instruction to the jury.[12]

We cannot overstate the extent to which we disapprove of this sort of improper vouching by prosecutors. As per *Berger*, by engaging in such conduct, prosecutors thereby violate their obligation to strive to do justice rather than merely to win. Therefore, we suggest that trial judges within the circuit respond to improper vouching with a prompt, curative instruction similar to that recommended by Judge Friendly in *Arroyo–Angulo*, 580 F.2d at 1149–50 (Friendly, J., concurring) (quoted *supra*). As Judge Friendly so convincingly argued, "[i]f prosecutors know that such instructions will be given, they will hardly be tempted to the excesses committed here." *Id.*

Now that we have determined that the prosecutor's remarks were improper, the next step under *Leon* and *Bess* is to determine whether the court abused its discretion by denying Appellant's motion for mistrial. If the error was harmless, there was no abuse of discretion.

### 3. The Impropriety Constitutes Reversible Error

▪ Applying the *Leon* factors to determine whether the impropriety was flagrant, it is clear that remarks of the sort that are at issue in the present case have a tendency to mislead the jury and to prejudice the accused. On the other hand, however, these improper remarks were isolated, and there is

---

**10.** The prosecutor stated that if the government finds that Mr. Patrick has lied, he will have to stay in jail longer. R. 35–2 at 276; *see supra* note 1.

**11.** The prosecutor stated, "What is the one thing that will keep [the Patricks] from doing any more [jail] time than necessary? The truth." R. 35–2 at 281; *see supra* note 3.

**12.** The court did instruct the jury later that "[t]he lawyers' statements and arguments are not evidence," and that the jurors are to make their decision "based only on the evidence." R. 35–2

at 287. Such instructions have sometimes been deemed to cure improprieties in closing argument. However, in *Solivan*, 937 F.2d at 1149, 1156, when the trial court declared a recess after a prosecutor's improper closing remarks, and admonished the jury only after the recess, we held that

> the instructions given by the district court were insufficient and came too late to mitigate the negative and highly prejudicial impact of the remarks on the jurors minds, especially since the remarks were among the final arguments presented to the jurors prior to their deliberations.

no indication that they were deliberate. On balance, we conclude that the impropriety was not flagrant. It follows that the *Bess* test applies, and that the Appellant is entitled to a new trial only if proof of his guilt was not overwhelming, he objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury. *See Bess,* 593 F.2d at 757; *see supra* note 6.

All three of these factors apply to the present case. First, the only evidence against Appellant was the testimony of the Patricks; there was no physical evidence linking Appellant to cocaine distribution or to the conspiracy. Thus, it is possible that the prosecutor's improper bolstering of the Patricks' testimony made the difference between conviction and acquittal. Second, although one of the prosecutor's worst remarks was not objected to, *see supra* note 2, Appellant did object to other improper remarks. Third, the court failed to give a prompt and adequate curative instruction to the jury. We hold that this failure was an abuse of the trial court's discretion. Appellant is entitled to a new trial untainted by improper prosecutorial vouching.

### B. Time Limit for Bringing Matter to Trial

■ Appellant argues that the district court violated his right to a speedy trial by not holding the trial within the time required by the Speedy Trial Act, 18 U.S.C. § 3161. The trial court did not count the time in which three continuances were pending. One of these continuances was requested by Appellant, but two were requested by the government because a material witness, Robin Patrick, was unavailable for medical reasons.

"We review the facts supporting a Speedy Trial Act ruling using the clearly erroneous standard, and the legal conclusions de novo." *United States v. Ortega–Mena,* 949 F.2d 156, 158 (5th Cir.1991); *see also United States v. Tanner,* 941 F.2d 574, 579 (7th Cir.1991) ("On appeal we review the district court's interpretation of the [Speedy Trial] Act *de novo,* and its findings of fact concerning the Act for clear error."), *cert. denied,* ⸺ U.S.

⸺, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992). A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Appellant agrees that § 3161(h)(3) excludes from consideration a delay caused by the unavailability of an essential witness, and does not challenge the sufficiency of the medical reasons for Ms. Patrick's unavailability. He contends instead that the government failed to show in its motions for continuances that Ms. Patrick's testimony was essential. Consequently, Appellant concludes, the district court had no basis for concluding that Ms. Patrick was an essential witness.

The record shows that, at the time it ruled on Appellant's motion to dismiss pursuant to the Speedy Trial Act, the court knew that Ms. Patrick was a co-defendant and an alleged co-conspirator, and that she was fully cooperating and had given the government a full statement prior to the indictment. The court held that "there can be ... no more important witness than a codefendant, an alleged co-conspirator; and it seems to me the government is entitled to have that witness present at the trial." On the basis of what the court knew, this conclusion was amply justified, and it turned out that Ms. Patrick's actual testimony was as essential as the court predicted it would be. There was no clear error here.

### C. Sentencing Range Within Criminal History Two

■ The court placed Appellant in criminal history category two for sentencing purposes, in light of a prior Florida conviction for importing over a thousand kilograms of marijuana. The court expressly found that the Florida crime and the present crime were two separate offenses. The district court also mentioned that a Florida plea agreement expressly limits the prosecution to the offenses involving the smuggling of marijuana, which serves to indicate the sepa-

rateness of the two offenses. *See* Disposition Proceedings Transcript at 8–9.

Appellant argues that the court's finding was erroneous; the Florida conspiracy was so related to the present case—both involving a common scheme to distribute drugs during the same two year period—that they should be treated as one crime, meriting only one sentence. The government responds that the one charge involved smuggling marijuana into Florida, and the other involves distributing cocaine in Tennessee; despite the time frame, these are two separate offenses.

With respect to applying the sentencing guidelines, a court of appeals "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e); *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991) ("We review a district court's factual findings which underlie the application of a guideline provision for clear error."). Appellant has neither asserted any facts, nor cited to any law, in support of his contention that the two offenses involved a common scheme. That the two crimes were perpetrated during the same two year period hardly constitutes proof that they stemmed from one common scheme. We find no basis for reversing the court below on this issue.

**D. Production of Witness Interview Notes**

During the trial, Appellant asked for the notes taken by Tennessee Bureau of Investigation agent David Jolley, claiming that it was Jencks material. The court reviewed the material, found that it was not a "substantially verbatim transcript of the interview," and concluded that the notes were not Jencks material. At Appellant's request, the court ordered that the notes be sealed and sent to the court of appeals.

The court's conclusion of law—that if the notes are not a substantially verbatim transcript, they are not Jencks material—was certainly correct. *United States v. Williams,* 962 F.2d 1218, 1224 (6th Cir.1992). The government's notes from an interview must be produced only if they "were read back to and verified by the witness *and* if the report summarized the notes without material varia-

tion." *Id.* "[T]he reasoning behind the rule is that it would be grossly unfair to allow the defense to use a statement to impeach a witness which could not fairly be said to be the witness' own rather than a product of the investigator's selections, interpretations, and interpolations." *Id.*

"The district court's ruling on factual determinations relating to production of documents is reviewed under a clearly erroneous standard." *Id.* We have reviewed the interview notes. Arguably, they could be considered a "*substantially* verbatim transcript" of the interview, though it is clear that the writer was not attempting to make a *literal* verbatim transcript. Arguably, the district court erred when it found that the material was not a "substantially verbatim transcript of the interview." Nevertheless, there is no indication that they were verified or adopted by the witness interviewed. Therefore, regardless of whether these notes are substantially verbatim or not, they are not Jencks Act material. Therefore, we affirm the district court's holding that the Jencks Act does not require their production.

### III. Conclusion

Although the prosecutor's remarks were not flagrant, the remarks were improper. In view of the quality of the evidence presented at trial, the improper remarks may have affected the outcome of the trial and thus were not harmless. In light of the prosecutor's improper vouching for the honesty and credibility of his witnesses to which the defendant objected, and the trial court's lack of a prompt and adequate admonishment to the jury so as to cure the harm caused by the prosecutor's improper vouching for the honesty and credibility of his witnesses, Richard Carroll's conviction is **REVERSED**, and the matter is **REMANDED** for a new trial in accordance with this opinion.