**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cetewayo Askia BRIGGS,**
**Defendant–Appellant.**

No. 00–2012.

United States Court of Appeals,
Sixth Circuit.

Dec. 12, 2001.

Before MARTIN, Chief Judge; CLAY, Circuit Judge; and GARWOOD, Circuit Judge.*

CLAY, Circuit Judge.

Defendant, Cetewayo A. Briggs, appeals from the judgment of conviction and sentence entered by the district court on August 31, 2000, after being found guilty for conspiracy to manufacture cocaine base in violation of 18 U.S.C. § 846 and § 841(a)(1), and manufacture of cocaine base in violation of 18 U.S.C. § 841(a)(1), for which Defendant was sentenced to concurrent terms of 240 months' imprisonment. For the reasons set forth below, we AFFIRM Defendant's judgment of conviction and sentence.

## BACKGROUND

Defendant was arrested on the night of October 19, 1999 when law enforcement officers from the City of Muskegon, Michigan stopped him for an outstanding traffic warrant. Defendant, who was the target

---

* The Honorable Will Garwood, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

of a federal drug investigation, was questioned at the police station about his involvement in cocaine trafficking in Muskegon County. After being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Defendant admitted to two interrogating police officers that on occasion he had cooked crack cocaine for Stacey Thompson and Alonzo Johnson. At trial, the two police officers gave testimony that Defendant admitted to them that he manufactured cocaine base for Thompson and Johnson. Thompson also provided testimony that one night in the early summer of 1999 he took Defendant to Johnson and Carlos Piggee's apartment to cook about 36 ounces of powder cocaine in order to produce about 60 ounces of crack cocaine for Johnson. Piggee testified that he was present when Defendant cooked the cocaine. Johnson, a crack cocaine dealer since 1997, provided testimony that he paid Defendant for the crack cocaine, but that his primary motivation was to learn Defendant's cooking method, which produced a greater quantity of crack cocaine from powder cocaine than Johnson's own method at the time. On the following night, Johnson and Defendant went to Thompson's house before returning to Johnson and Piggee's apartment where they cooked about two kilograms of powder cocaine, producing approximately three kilograms of crack cocaine, which Johnson later sold. Having learned Defendant's cooking method, Johnson afterwards did not have further occasion to use Defendant to make crack cocaine.

In an indictment filed on January 11, 2000, Defendant was charged along with Johnson with conspiracy to manufacture cocaine base in violation of 18 U.S.C. § 846 and § 841(a)(1), and manufacture of cocaine base in violation of 18 U.S.C. § 841(a)(1). After the district court denied Defendant's motion to suppress his statements to law enforcement officers on March 20, 2000, Defendant was tried by a jury, and convicted of both counts. On August 23, 2000, Defendant was sentenced to concurrent terms of 240 months' imprisonment on each count. Defendant's timely appeal ensued on August 29, 2000.

## DISCUSSION

I. Allegations of Prosecutorial Misconduct

Defendant first challenges his convictions on the basis of prosecutorial misconduct, claiming that the prosecutor bolstered and vouched for three government witnesses by referring to their plea agreements during direct examination and rebuttal closing argument. *See United States v. Carroll,* 26 F.3d 1380, 1387–89 (6th Cir.1994) (finding that improper vouching occurs when the prestige and authority of the government are placed behind the witnesses to support their credibility).

Because Defendant failed to object to the prosecutor's comments at trial, we review his claim for plain error. *Id.* at 1383. Plain error is found "only in exceptional circumstances," and only when the error is so plain that "the trial judge and prosecutor were derelict in countenancing it." *Id.* In reviewing claims of prosecutorial misconduct under the plain-error standard, we determine whether the prosecutor's statements were improper, and, if so, whether the impropriety was flagrant. *Id.* at 1384–90. This Court considers four factors in determining flagrancy: (1) whether the remark tended to mislead the jury or prejudiced the defendant; (2) whether it was isolated or extensive; (3) whether it was deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the defendant. *See id.* (quoting *United States v. Leon,* 534 F.2d 667, 678–83 (6th Cir.1976)). If the com-

ment was not flagrant, reversal is proper only when "(i) the proof against the defendant was not overwhelming, (ii) opposing counsel objected to the conduct, and (iii) the district court failed to give a curative instruction." *United States v. Brown*, 66 F.3d 124, 127 (6th Cir.1995) (citing *Carroll*, 26 F.3d. at 1384–90).

■ Reviewing the prosecutorial remarks in context, we find that Defendant has failed to show that the challenged comments during direct examination and rebuttal closing argument were improper. As a review of the record indicates, the prosecutor elicited testimony during direct examination from three government witnesses, Stacey Thompson, Alonzo Johnson, and Carlos Piggee, regarding their plea agreements. Specifically, the prosecutor introduced Johnson and Thompson's plea agreements into evidence, after eliciting testimony from them regarding the terms of their agreements requiring them to cooperate with the government and to testify truthfully. On cross-examination, defense counsel questioned both Thompson and Johnson regarding their hope for leniency or a sentence reduction and their understanding that they would lose the benefits of their respective plea agreements if they knowingly gave false testimony.

On redirect examination, the prosecutor elicited testimony from Thompson in which he acknowledged his belief that the government would bring additional charges against him if he knowingly testified falsely, but that there was no benefit to him for testifying falsely. Similarly, the prosecutor elicited testimony from Johnson during redirect examination that his sentence reduction was not conditioned upon Defendant being found guilty, that the only thing that mattered was that he told the truth, and that there was no benefit to lying.

Although Defendant claims that the prosecutor elicited testimony from Johnson and Thompson about their plea agree-

ments to improperly bolster or vouch for the truthfulness of these government witnesses, it is readily apparent that the prosecutor merely responded to the defense counsel's cross-examination within the proper scope of re-direct examination. Accordingly, we find that there was no improper vouching during the prosecutor's examination of the government witnesses.

■ There was also no improper conduct by the prosecutor during rebuttal closing argument. In closing argument, the prosecutor noted the existence of the witnesses' plea agreements, pointing out that they were available to be read in the jury room, while cautioning the jury about the reliability of testimony from witnesses with prior convictions. In contrast, defense counsel's closing argument referred extensively to the plea agreements and the motivation of the government witnesses to lie. Specifically, defense counsel argued that "Each witness up here told you effectively that he's here testifying hoping to get time knocked off" and that they "would literally sell their own mothers to get a deal." Defense counsel also read one-half of paragraph 7 of Piggee's plea agreement stating that the government agreed to use "good faith" in determining whether the witness would receive a sentence reduction.

In rebuttal closing argument, the prosecutor responded to defense counsel's closing argument by informing the jury that the plea agreements were "pretty much the same," reading paragraph seven of Thompson's plea agreement as an example, which stated that the witness had a continuing obligation to cooperate with the government. The prosecutor further stated that "[t]hese people are not here testifying because they chose to do so," but "because they are required to do so." In addition, the prosecutor read the full text of paragraph ten of Thompson's plea agreement,

which was identical to paragraph 7 of Piggee's plea agreement. As the prosecutor pointed out to the jury, defense counsel did not read the section of the paragraph stating that the district court had "complete discretion" to determine the sentence reduction. The prosecutor then added that "It doesn't matter whether Mr. Briggs is convicted or not. What matters is that these defendants [sic] tell the truth." The prosecutor, after reading from paragraph 11 of Thompson's plea agreement specifying the consequences of a breach of the agreement, then added: "What do these men have to lose? They have a lot to lose by lying. What do they have to gain if they tell the truth? They have the possibility of a sentence reduction. Use your common sense, ladies and gentlemen. What do they have to gain by lying?"

To the extent that any conduct by the prosecutor during rebuttal closing argument was improper, it was invited or provoked by defense counsel. *See United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir.1996); *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir.1993)(finding that a party may not invite error and then complain of it on appeal). Specifically, there is no indication that the prosecutor was putting the full weight of her office behind the credibility of these witnesses in her rebuttal closing argument. Rather, the prosecutor simply countered defense counsel's closing argument suggesting that the witnesses were willing to lie at Defendant's expense to achieve a sentence reduction. Thus, we find that Defendant has failed to show plain error with regard to the prosecutor's conduct at the trial.

II. Admission of Hearsay Evidence under Federal Rules of Evidence 801(d)(2)(E)

Defendant also claims that the district court abused its discretion by not allowing defense counsel to elicit testimony from defense witness, Vonda Harris, one of Johnson's paramours, about what Johnson's relationship was with Defendant. At trial, the prosecutor objected on grounds of hearsay to defense counsel's questioning Harris about this relationship, prompting defense counsel to respond that the testimony was admissible under the co-conspirator statement exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E). When the prosecutor argued that "[u]nless Ms. Harris is indicating that she was in fact a co-conspirator, then these [statements] would not be in furtherance of the conspiracy," the district court agreed and sustained the objection.

Federal Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and furtherance of the conspiracy." As pointed out by this Court in *United States v. Maliszewski*, 161 F.3d 992, 1011 (6th Cir.1998), the offering party must show by a preponderance of the evidence that "(1) a conspiracy existed; (2) the party against whom the statement is offered was a member of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy."

Because a witness need not be a co-conspirator for the statement to be admissible under Rule 801(d), the district court erred in sustaining the prosecutor's objection on the cited basis. We nonetheless find that Defendant cannot satisfy the foundational requirements of the rule. In particular, Defendant cannot show by a preponderance of the evidence that Johnson's statements made to Harris were being offered against the government, i.e., that the government was a member of the conspiracy. See *Maliszewski*, 161 F.3d. at 1011 ("Here, the government was the party against whom the statement was offered, and we feel confident that Edward

does not mean to suggest that the government was a member of the conspiracy. That fact precludes admission.").

### III. Application of the Safety Valve Provision

■ Defendant next claims that the district court erred by failing to consider at his sentencing hearing whether he qualified for the safety valve provision under 18 U.S.C. § 3553(f) and USSG § 5C1.2. Under the safety value provision, the district court is required to ignore the statutory minimum sentences of specified drug-related offenses when (1) the defendant has no more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." 18 U.S.C. § 3553(f).

At the sentencing hearing, the district court found that the safety valve provision was not applicable, observing that "there has been no acknowledgment or acceptance of responsibility" and that Defendant had not tendered a proffer to the prosecutor. Defendant claims that the district court erred by confusing the "acceptance of responsibility" provision with the safety valve provision and by not permitting him to make a proffer at the time of the sentencing hearing. Although the district court questioned the prosecutor about whether there had been an acknowledgment or acceptance of responsibility, the record clearly indicates that the district court was cognizant of the fact that it was

determining whether the safety valve provision of the sentencing guidelines was applicable, not the acceptance of responsibility provision under U.S.S.G. § 3E1.1. Moreover, although Defendant claims that the district court did not provide him with an opportunity to make a proffer during the sentencing hearing, the record conclusively shows that Defendant failed to make such a proffer as to qualify for the safety valve. Inasmuch as Defendant never made a proffer, the district court properly concluded that the safety valve was not triggered. Thus, we find no error.

### IV. Alleged Violation of *Apprendi v. New Jersey*

■ Defendant also argues that he is entitled to a new trial under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because the district court erred by using the preponderance of the evidence standard in determining the quantity of drugs involved in this case. Because Defendant did not bring the claimed error to the attention of the district court, we review it for plain error. Fed.R.Crim.P. 52(b). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *See id.* at 488, 120 S.Ct. 2348. Because Defendant's sentence did not exceed the statutory maximum of 20 years' imprisonment under § 960(b)(2)(B), no *Apprendi* violation has occurred in this case.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of conviction and sentence.