**Jonathan HIRSCH, Plaintiff–Appellee,**

**v.**

**Anthony J. BRIGANO, Defendant–Appellant.**

No. 01–4289.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 2003.

Before GILMAN and GIBBONS, Circuit Judges; and JORDAN, District Judge.*

## OPINION

GILMAN, Circuit Judge.

Following a jury trial in Ohio state court, Jonathan Hirsch was found guilty of aggravated murder and sentenced to life in prison without eligibility for parole for 20 years. After his conviction and sentence were affirmed on direct appeal, Hirsch filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio, asserting seven claims for relief. The district court denied the writ, but granted a certificate of appealability as to two of Hirsch's claims: (1) that he was denied due process when the trial court permitted the prosecutor to introduce evidence of prior had acts to attack his character, and (2) that the prosecutor's improper remarks during opening statement and closing argument resulted in a denial of due process. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

On October 27, 1994, Caroline Jones, Hirsch's mother-in-law, was found dead near her garage. Jones had been attacked and stabbed numerous times in the chest and neck. Police officers arrived on the scene and collected blood samples, as well as hair samples from a baseball cap found near Jones's body. The police had no immediate leads, and the case remained unsolved for over a year. They then received an inquiry from a Florida private investigator hired by Stephen Cantwell,

---

* The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

one of Hirsch's former business partners. The investigator's call led the police to interview Cantwell and Hans Cone, another former business partner of Hirsch. Both Cantwell and Cone reported that Hirsch had bragged to them about murdering his mother-in-law, providing details that only the killer would know. Hirsch's two former business partners had not previously been acquainted.

According to Cantwell and Cone, Hirsch drove from Florida to Ohio in a friend's car the day before the murder. Hirsch had told Cone that he was going on vacation, asked Cone to feed his dogs, and left Cone a note requesting that he make two long-distance telephone calls from Hirsch's home. Cone reported that he made these calls, which showed up on Hirsch's telephone bill, at 10:30 p.m. the night before the murder.

Hirsch told Cantwell and Cone that he had arrived in Ohio early on the morning of the murder and had hidden in the yard behind Jones's apartment waiting for her. When Jones left her apartment. Hirsch attacked her with a knife and killed her. During the attack, Jones stabbed her attacker in the arm with her keys. Cone recalled seeing Hirsch's arm bandaged shortly after the murder, and Cantwell observed scars on Hirsch's arm sometime later. Hirsch filed after the attack, leaving his baseball cap behind. Hirsch reportedly was not concerned about leaving hair samples at the scene because he had a crew cut.

Upon returning home, Hirsch informed Cantwell that he regretted telling Cone about the murder. Hirsch and Cone had been involved in a fraudulent check scheme, and Hirsch feared that if Cone were arrested he would tell the police about the murder as part of a plea-bargain agreement. Hirsch therefore decided to kill Cone. With the help of an accomplice.

Hirsch subsequently beat Cone, shot him with a stun gun, and hit him in the head with a carbon dioxide cannister. The police, after being called by an eyewitness, arrived to find Cone barely conscious and covered in blood.

Hirsch was convicted of attempting to murder Cone. The attempted murder caused Cantwell to fear for his own safety. At this point Cantwell hired a private investigator to see if Hirsch's story about murdering his mother-in-law was true. It was this private investigator who contacted the police in Ohio and provided the lead that eventually led to Hirsch's arrest.

After speaking with Cantwell and Cone, the police arrested Hirsch in Florida and subsequently confirmed that the hair on the cap found at the scene was consistent with Hirsch's hair. Hirsch put on an alibi defense at trial, but the jury found Hirsch guilty after hearing all of the evidence.

## II. ANALYSIS

### A. Standard of review

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies to Hirsch's case because he filed his habeas corpus petition after the effective date of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In its discussion of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. A district court's denial of the writ is subject to de novo review. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998).

## B. Admission of prior-bad-acts evidence

█ Hirsch alleges that his due process rights were violated by the admission of certain evidence introduced for the alleged purpose of demonstrating that he had the propensity to murder his mother-in-law. Specifically, Hirsch takes issue with the admission of (1) a detailed account of his attempt to murder Cone, (2) evidence that he pled no contest to the attempted-murder charge, was placed on probation, and was ordered to pay Cone restitution, (3) an account of Hirsch's and Cone's fraudulent scams, (4) evidence of Hirsch's military training and interest in weapons, (5) testimony relating Hirsch's nicknames of "Psycho Jonny" and "Rambo," (6) testimony describing Hirsch's home as surrounded by barbed wire and vicious dogs, and (7) testimony that Hirsch had a bad temper, as demonstrated by his yelling at his wife and mother and shoving his employees.

State-law evidentiary errors are not generally cognizable in habeas corpus proceedings. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983). But "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). The state, of course, denies that any of the above evidence was improperly admitted. Even if we assume that at least some of the above evidence was improperly admitted, however, this court's recent decision in *Bugh* points out that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id.* at 512. As a result, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under AEDPA." *Id.* We therefore affirm the district court's denial of habeas relief as to Hirsch's claim regarding the admission of prior-bad-acts evidence.

## C. Prosecutorial misconduct

█ As his second ground for habeas relief, Hirsch asserts that the prosecutor made improper remarks regarding Hirsch's character and improper references to his prior conviction and other bad acts. "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997). The relevant question is thus whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

A two-step approach is employed in determining whether prosecutorial miscon-

duct violates a defendant's due process rights. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001). First, the court considers whether the prosecutor's conduct and remarks were improper. *Id.* If it concludes that the remarks were improper, the court then applies the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir.1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. *Carter*, 236 F.3d at 783. The four factors in *Carroll* are "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id.*

According to Hirsch, improper comments were made during the prosecution's opening statement, including references to Hirsch by his nicknames Psycho Jonny and Rambo, details of the scam operations that Hirsch and Cone were involved in, descriptions of how the victim was "butchered," and a discussion of Hirsch's attempted murder of Cone in great detail. Hirsch further takes issue with several similar comments made by the prosecutor during his closing argument. Hirsch timely objected to relatively few of these remarks.

The Ohio Court of Appeals ruled that although many of the prosecutor's comments were clearly improper, the evidence against Hirsch was so overwhelming that any error was harmless. In making this determination, the Ohio Court of Appeals correctly applied the harmless-error standard. It considered Hirsch's detailed description of the murder to Cone and Cantwell, his failed attempt to establish an alibi, and his effort to silence Cone, con-

cluding that the jury would have returned a guilty verdict even without the prosecution's improper remarks. Based upon our review of the entire record, we agree with the district court that "[t]he Ohio Court of Appeals' determination on petitioner's prosecutorial misconduct claim was based on a reasonable assessment of the record evidence" and is not contrary to or an unreasonable application of clearly established federal law.

### III. CONCLUSION

For all the reasons set forth above, we AFFIRM the judgment of the district court.