that the defendant himself, in a misguided play for power, personally inconvenienced each and every juror by forcing them to travel from a neighboring county for trial, and to play upon the defendant's relative advantages in power, wealth, and prestige could not help but prejudice the jury against the defendant.   We are thus compelled by Supreme Court precedent not to treat the errors as harmless, and to affirm the district court's grant of a conditional writ of habeas corpus.

Thomas Osborne was asked to prosecute a criminal case that, on its merits, had a great likelihood of resulting in a felony conviction. Unfortunately, through grandstanding and a warped sense of courtroom decorum, he has succeeded only in making a mockery of constitutional principles and protections and has forced the expenditure of additional time and resources on a second trial in this matter. Despite these costs, we have no hesitation in ordering appropriate habeas corpus relief in an effort to rectify damage done in this case and, we hope, to prevent similar travesties in the future. The judgment of the district court granting Boyle a conditional writ of habeas corpus is AFFIRMED.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0009P (6th Cir.)
File Name:  00a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



CORNELIUS D. BOYLE,
   *Petitioner-Appellee,*

   *v.*                                            No. 98-6485

GEORGE MILLION, Warden,
   *Respondent-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 97-00241—Edward H. Johnstone, District Judge.

Submitted:  September 24, 1999

Decided and Filed:  January 7, 2000

Before:  BOGGS and DAUGHTREY, Circuit Judges;
DONALD,[*] District Judge.

_____

### COUNSEL

**ON BRIEF:**   Samuel J. Floyd, Jr., OFFICE OF THE ATTORNEY GENERAL, CIVIL DIVISION, Frankfort,

_____

[*] The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

Kentucky, for Appellant. Timothy K. Newcomb, GRANT & NEWCOMB, Laramie, Wyoming, Maynard D. Grant, GRANT & NEWCOMB, Seattle, Washington, J. Fox DeMoisey, DeMOISEY & SMITHER, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. Respondent George Million, the warden at Eastern Kentucky Correctional Center, appeals the decision of the district court granting the petitioner, Cornelius Boyle, a conditional writ of habeas corpus based upon prosecutorial misconduct that occurred during Boyle's criminal trial. Before us, Million contends that the writ was erroneously issued because it was based in part upon alleged prosecutorial misconduct during closing argument, a claim that the respondent insists was procedurally defaulted before the Kentucky state courts. We conclude, however, that the Kentucky appellate courts did not clearly and expressly base their denial of Boyle's claims upon procedural default rules. Consequently, the issue raised by the petitioner was properly before the district court. Moreover, because "grave doubt" exists as to whether the blatantly unethical prosecutorial conduct at Boyle's trial had a substantial and injurious effect upon the jury's decision, we concur with the determination that such error cannot be deemed harmless. We thus affirm the district court's grant of the conditional writ of habeas corpus in this matter.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The parties do not seriously dispute the relevant facts underlying the petitioner's conviction, appeals, and habeas history. Boyle, an ophthalmologist, moved from Baltimore to Mayfield, Kentucky, in 1987 and established an initially successful practice. Sometime after he declined to join a rival medical group, however, a number of malpractice suits were

"prosecutorial misconduct." Furthermore, closing arguments that appeal to class prejudices, encourage juror identification with crime victims, or vouch for the defendant's guilt would each be deemed beyond ethical bounds. To combine all three prejudicial ploys in one argument only compounds the error.

We have little hesitation in concluding that the errors by the prosecutor in this case were flagrant. First, the statements made by Osborne throughout the trial were obviously intended to mislead the jury and prejudice the defendant. In fact, the start of the prosecution's summation argument contained outright lies likely intended to convince the jury that a rich and powerful man, presumably with advantages not shared by the jurors themselves, somehow manipulated the judicial system for his own gain. Osborne knew that his statements intimating that the notoriety of the defendant and his prosecution forced the usual judge and prosecutor to recuse themselves from the case were incorrect and likely to prejudice the jury against Boyle. Such contemptible behavior on the part of a public servant under an obligation to seek justice cannot be condoned.

Second, the improprieties on the part of the prosecutor were not isolated, but rather infected all aspects of the trial. In light of Osborne's co-authorship of a handbook for trial lawyers that decried such tactics, moreover, it cannot reasonably be denied that the erroneous comments and statements were deliberately placed before the jury.

It is true that the case against Boyle was relatively straightforward and strong. Given the egregious and inflammatory nature of the behavior and arguments of the prosecutor throughout trial, however, we are left with "grave doubt" as to whether the prosecutorial errors "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). In fact, the prosecutor's efforts to equate the jurors with the defendant's victim, to emphasize the mistaken idea

reversal was not required." *Cornelius D. Boyle v. Commonwealth of Kentucky*, No. 94-CA-1036-MR, slip op. at 2 (Ky. Ct. App. Feb. 23, 1996) (emphasis added). Consequently, the state court of appeals itself did not interpret its decision as one relying substantially on procedural default. In such a situation, principles of comity and federalism require that we defer to the state court's determination of the basis of its decision and now engage in an examination of the merits of Boyle's habeas corpus claim alleging prosecutorial misconduct.

## III. *PROSECUTORIAL MISCONDUCT*

In *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994), we summarized our recent jurisprudence on the issue of prosecutorial misconduct in an effort to provide guidance for future cases and noted that, when addressing claims of prosecutorial misconduct, we first determine whether the challenged statements were indeed improper. *See United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). Upon a finding of such impropriety, we then "look to see if they were flagrant and warrant reversal." *Id.* (citing *Carroll*, 26 F.3d at 1388). Flagrancy is determined by an examination of four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id.* at 549-50.

Without question, the challenged portions of the prosecution's cross-examination of Boyle, and almost all of the government's closing argument, were highly improper. While a prosecutor is clearly authorized to strike hard blows in an earnest and vigorous prosecution, he or she "is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). Badgering and interrupting a witness, name-calling, predicting that the defendant will lie on the stand, and stating before the jury that the defendant is in need of psychiatric help are tactics so deplorable as to define the term

filed against him. Although he prevailed in most of them, his reputation suffered and his practice collapsed.

On July 1, 1990, Boyle became distraught and intoxicated after learning that Jean Ann Miller, a neighbor and his chief office assistant, tendered her resignation in order to join the practice of one of Boyle's competitors. On that evening, Boyle telephoned Miller and her husband, threatened to kill them, and was later spotted in the Millers' yard shooting a shotgun toward the Millers' residence. When another neighbor, Robert Pitman, armed himself and investigated the disturbance, he was injured by a shotgun blast from Boyle's weapon. Despite his claim that severe intoxication obliterated his memory of the incident, Boyle was arrested and charged with first-degree assault, terroristic threatening, and resisting arrest in regard to the incident. (The latter two charges were eventually dismissed and were never presented to the jury.)

Prior to trial, Richard Weisenberger, the regular prosecuting attorney for Graves County, successfully moved to substitute a special prosecutor for himself in the Boyle prosecution because Weisenberger had previously represented Boyle in an unrelated civil action. Similarly, the judge who normally heard criminal cases in the district disqualified himself from the case and was replaced by order of the Kentucky Supreme Court. Finally, due to the unusually large amount of pretrial publicity generated by the case, the trial court granted a defense motion to select the jury from the citizenry of a neighboring county.

Boyle's trial began innocently enough with Thomas Osborne serving as the special prosecutor in Weisenberger's stead. When Osborne began his cross-examination of defendant Boyle, however, the code of ethics and civility that should undergird the legal profession began to take devastating blow after blow. Immediately, Osborne launched into theatrics. He prefaced his third question to Boyle with the query, "Now, that is an outright lie, isn't it, Doctor?" With the boost from that springboard, he then began badgering Boyle, interrupting his answers, and even going so

far as to throw a deposition into Boyle's lap. When chastised by the court for his outburst, Osborne unrepentantly proclaimed before the jury, "Dr. Boyle, I apologize if I dropped those records in your lap too hard. I didn't mean anything by that. *I just was frustrated that you were lying and I'm going to prove it . . . .*" (Emphasis added.) After further contentious questioning, Osborne drew an additional reprimand from the trial judge for suggesting, again before the jury while questioning Boyle, that Boyle needed a psychiatrist.

Despite the startling display of unprofessional and unethical conduct by Osborne during cross-examination of Boyle, the prosecutor saved his most egregious conduct for his summation argument at the close of the proofs. Osborne began his lengthy argument by improperly describing Boyle as an individual more privileged, and thus less worthy of compassion or just treatment, than the jurors themselves. He then falsely stated that Boyle received special treatment because of his socio-economic status, that the jurors easily could have been selected as Boyle's targets, and that the prosecutor *knew, without doubt,* that Boyle was guilty. Specifically, Osborne argued, in relevant part, as follows:

> May it please the court and counsel. Ladies and gentlemen of the jury, this is the absolute best time of the trial because at this point in time you get to start using your common sense about this case. And your common sense about this case has probably already told you it's not the ordinary, run of the mill case. This case is different. It's different for one reason and one reason alone. That is because Cornelius Boyle is not your ordinary run of the mill defendant. *Dr. Cornelius Boyle, ladies and gentlemen, was a rich and powerful man in this town for a while. He was a big cog in a big wheel, and the real question in this case is how does our system of justice in this country treat the big wheel, the big cog, the power man, the guy that threatens his employees, the guy that throws around his money, the guy that acts big, the guy that pushed people around, and the guy that*

Cir. 1996). The Supreme Court has cautioned, however, that "the mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Moreover, the last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar. *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

All parties to this appeal agree that Boyle failed to object contemporaneously to most of the improper arguments made by Osborne in summation and that, in the usual case, such failure would foreclose appellate review of the matter. The parties further agree that the decision rendered by the Kentucky Supreme Court on direct appeal was merely a summary disposition and that the decision of the Kentucky Court of Appeals is the final *reasoned* opinion on the procedural default issue. The parties' dispute centers, therefore, on the question of whether the Kentucky Court of Appeals "clearly and expressly" relied on procedural default to reject Boyle's claims.

Fortunately, we are not required to decide this question in a vacuum. Even if we were to determine in a similar case that an appellate proclamation that an issue was not preserved for review, followed by a discussion of the harmlessness of any error, constitutes a clear expression of reliance on the state procedural rule, we would not be bound by such a conclusion in this case. This is so because the Kentucky Court of Appeals itself, in its later opinion affirming the denial of Boyle's request for a new trial based upon newly discovered evidence, characterized the basis of its prior decision as substantive, rather than procedural. In that opinion, the court summarized the history of the litigation by stating, "Boyle appealed to this Court, and in an opinion of March 5, 1993, this Court affirmed Boyle's conviction. This Court held that although some of the comments by the prosecutor were inappropriate, *based upon the substantial evidence presented,*

Although there is no doubt that the Commonwealth's closing argument went well beyond what is allowed, we do not believe that a manifest injustice resulted from the errors. Accordingly, we affirm the judgment *because the evidence strongly supports the verdict upon which it is based* and because the jury was properly instructed.

*Id.*, slip op. at 11-12 (emphasis added).[1]  The Kentucky Supreme Court denied discretionary review in a summary order with Chief Justice Robert Stephens noting his dissent. *See Cornelius D. Boyle, M.D. v. Commonwealth of Kentucky*, No. 93-SC-193-D (Ky. Oct. 22, 1993).[2]  Subsequent post-conviction motions were similarly unsuccessful, and Boyle filed his petition for habeas corpus relief in federal court on September 9, 1997.

Although a magistrate judge initially recommended that the respondent's motion to dismiss the petition be granted, the district court conditionally granted habeas corpus relief based upon its conclusion that the challenged prosecutorial errors so infected the integrity of the proceeding as to violate the guarantee of a fair trial. This appeal then ensued.

## II. *PROCEDURAL DEFAULT*

The state now argues that procedural default in the state courts precludes federal jurisdiction over Boyle's complaint regarding the propriety of Osborne's closing argument. We have consistently held that, absent cause and prejudice, "a federal habeas corpus petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review." *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th

---

[1] One member of the appellate panel dissented, finding that "the procedural errors assigned by appellant most certainly deprived him of a fair and impartial trial." *Id.*, slip op. at 12.

[2] The Kentucky Supreme Court did take the unusual step of requesting the Kentucky Bar Association to investigate the conduct of the prosecutor in the case.

*threatens people, and, finally, the guy that goes over the edge and shoots somebody – calls them up in the middle of the night, the rich and powerful man does, and says, "I'm coming to kill you," and then he shows up out there with a shotgun and he shoots at the house.*

\*    \*    \*    \*    \*

*What's the first thing that happens? The judge of the Graves Circuit Court recuses himself; he can't hear the case; hands off. So a special judge has to be appointed by the Supreme Court, Judge Fuqua, to hear the case. The second thing that happens, local prosecutor, Rick Weisenberger, can't handle it. Has to get out. It's too hot. So the Attorney General of Kentucky appoints me as special prosecutor to present the case to you. It's not like any other case, yet.*

*Then what happens? The Graves County jury is not quite good enough to hear the case for Dr. Boyle in his hometown. He gets one from Paducah, one of people that don't know him. Now, you, then, drive from Paducah every day for a week, the special judge comes from Todd County, and I come here to present this criminal case. It's not like other cases.*

*The second thing that happened that makes it different from all other cases is right here. It's Mr. Mark Bryant, it's Mr. Will Kautz, and it's the defense that's presented.*

*Ladies and gentlemen, what you've got is not the typical lawyer advising a client defense. What you've got was the most expensive, time consuming, nit-picking defense that made no difference about all the facts they talk about that you could have ever imagined. They put a doctor on the stand that told the biggest whopper in the world,* about not knowing where he was, and then, on top of that, called a psychiatrist to try to doodle you into thinking that somehow he's okay and you shouldn't punish him, somehow he's different and you ought to let him go, somehow he's smart and he's intelligent and you

shouldn't do anything about him. *Now the reason you got that defense is because Dr. Boyle has the ability to muster the resources to present that defense*, and I don't begrudge that. That's fair. That's our system. He had the resources, but you have to understand that's what you heard, and that's what you got. That's what the resources were used for. The little old ladies that you saw, the Medicare payments for those surgeries that weren't needed, they went into the pockets of this type of defense.

\*   \*   \*   \*   \*

Now, the most important single fact that you need to think about right now, and what I want to ask you to think about right now, is you're at home, any of these homes; you're at home at the Tidwells' house, the Millers' house, or the Pitmans' house. It's an ordinary night. Nothing different is going on. You're just at home. *'Cause these people were selected at random. These three people were selected at random by the defendant. They were selected the same way you all were; just like you were selected at random through the process; they knew not that they were going to be caught up in this huge conflict. They knew not that they were going to be drug into court some day and asked all these questions. They were selected at random by this man. Now, that makes them exactly like you, in a way.*

\*   \*   \*   \*   \*

I don't know what . . . was in his mind at the second, and he's not ever going to tell anybody what was going on; so it's – we have to guess a little bit. *But what I do know for sure is he's guilty of wanton first degree assault as are in the instructions.*

\*   \*   \*   \*   \*

*The man committed a murder*; it's just Bob got saved in that emergency room.

\*   \*   \*   \*   \*

*For that reason, ladies and gentlemen of the jury, I ask you to make your verdict stand for something important, to make your verdict mean something important, to make your verdict be truth and be justice for Bob Pitman, and for Dr. Boyle, so that the Dr. Boyles of the world know just because they're rich, just because they're powerful, just because they can hire the best defense, when all of the facts are patently clear, and they're guilty of first degree wanton assault, they're just as guilty as the lowest average little guy in this town.*

(Emphasis added.) Throughout his closing argument, Osborne also made numerous additional references to the fact that the jurors should identify themselves with the victim and the victim's family and neighbors.

Not surprisingly given both the nature and the tenor of the prosecution's harangue, the jury voted to convict Boyle of the offense charged in the indictment. After being sentenced by the trial court to a ten-year prison term, however, Boyle began his efforts to overturn that conviction. He first appealed to the Kentucky Court of Appeals, raising numerous issues, including a claim that Osborne was guilty of prosecutorial misconduct in the manner in which he conducted the cross-examination of Boyle and in which he argued to the jury in summation. *See Cornelius D. Boyle v. Commonwealth of Kentucky*, No. 91-CA-001314-MR, slip op. at 8-12 (Ky. Ct. App. Mar. 5, 1993). Despite finding the prosecutor's actions objectionable, the court noted that "[b]ecause Boyle failed to object to these statements [made at argument], he did not properly preserve them for review." *Id.*, slip op. at 11. The majority of the three-member appellate panel, however, then ruled:

*Considering the evidence*, we believe it is likely the jury would have convicted Boyle of wanton assault even without the improper statements. Boyle did not deny that he shot Pitman. His defense of self-protection was based on what he thought might have happened.