COLE, Circuit Judge,
concurring.
The Constitution entitles a criminal defendant to a fair trial, not a perfect one, *331 Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), and although this is a close ease, I agree with the result reached by the majority because the prosecutorial misconduct at issue did not so infect the trial with unfairness as to make the conviction a denial of due process, Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). I write separately to highlight the fact that the prosecutor in this case made several comments that constituted misconduct, one of which was particularly serious.
I. LEGAL STANDARDS
A. Standard of review
When considering prosecutorial-miscon-duct claims on habeas review, “the relevant question is whether the prosecutor’s comments so infected the trial with unfairness as to make the conviction a denial of due process.” Lundgren v. Mitchell, 440 F.3d 754, 778 (6th Cir.2006) (quotation omitted). If the state courts have ruled on a petitioner’s non-defaulted prosecutorial-misconduct claims, those rulings are entitled to heightened AEDPA deference. Id. Here, the Michigan state courts reviewed Smith’s prosecutorial-misconduct claim only for plain error, so there is no merits decision to which we could defer under AEDPA. See White v. Mitchell, 431 F.3d 517, 527 (6th Cir.2005). However, Smith’s claim has been procedurally defaulted, so we cannot review it unless he demonstrates “cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstratives] that failure to consider the claims will result in a fundamental miscarriage of justice.” Girts v. Yanai, 501 F.3d 743, 755 (6th Cir.2007) (internal quotation marks and editorial marks omitted). Unlike the majority, I begin my analysis with the prejudice inquiry, rather than the cause inquiry. The prejudice inquiry essentially overlaps with the question of whether the prosecutor’s comments so infected the trial with unfairness as to make the conviction a denial of due process. Cf. Banks v. Dretke, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (noting that “prejudice” prong of procedural default analysis parallels prejudice prong of a Brady pros-ecutorial-misconduct claim). Because I find that the prosecutor’s comments did not so infect the trial, Smith has not demonstrated prejudice sufficient to overcome the procedural default, and I do not reach the cause inquiry.
B. Prosecutorial misconduct analysis
“When addressing claims of prosecutorial misconduct, we first determine whether the challenged statements were indeed improper.” Boyle v. Million, 201 F.3d 711, 717 (6th Cir.2000). “Upon a finding of such impropriety, we then ‘look to see if they were flagrant and warrant reversal’ ” because only a retrial could correct the error. Id. (quoting United States v. Francis, 170 F.3d 546, 549 (6th Cir.1999)). We use a four-factor test to analyze the flagrancy of alleged instances of prosecutorial misconduct: 1) whether the prosecutor’s statements tended to mislead the jury or prejudice the accused; 2) whether the misconduct was isolated or extensive; 3) whether the misconduct was deliberate;[1] and 4) the total strength of the evidence against the accused. Id.
In cases heard on direct appeal, rather than through habeas review, we have held that “[t]here are instances where a single *332 misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated.” See United States v. Carroll, 26 F.3d 1380, 1387 (6th Cir.1994) (reversing conviction where prosecutor inappropriately and misleadingly vouched for credibility of government witnesses where proof of guilt was not overwhelming) (citing United States v. Solivan, 937 F.2d 1146, 1150 (6th Cir.1991)). In Solivan, we reversed a defendant’s conviction where the prosecutor, in his closing argument, urged the jury to.find the defendant guilty, saying “I’m asking you to tell [defendant] and all of the other drug dealers like her ... that we don’t want that stuff in Northern Kentucky....” Id. at 1148. We held that this single statement was “so inflammatory in the context of the ongoing drug war” that it deprived the defendant of a fair trial. Id. at 1155. To the extent that the majority, quoting Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir.1997), suggests that habeas relief based on prosecutorial misconduct is not available unless the misconduct occurred throughout the entire trial, rather than merely during counsel’s arguments, I disagree. The full quote from Pritchett states, “prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, or so gross as probably prejudice the defendant.” Id. (internal citations and quotation marks omitted) (emphasis added). If a single instance of prosecutorial misconduct is so prejudicial that it infects the defendant’s whole trial with unfairness and deprives him of due process, the defendant is surely entitled to habeas relief.
II. APPLICATION
While I agree with the majority’s conclusion that many of the challenged prosecu-torial comments were proper and that the district court overstated the extent of the prosecutorial error at issue, the majority does not adequately acknowledge the several clearly improper comments the prosecutor made in this case. Below, I discuss these comments in order of their potential for prejudice, beginning with what I deem to be the most serious error. I then analyze whether, taken together, these comments deprived Smith of a fair trial.
A. The instances of misconduct
By far the most troubling instance of misconduct came at the close of the prosecutor’s rebuttal argument, when she stated to the jury:
You all took an oath to return a fair and just verdict. Coming back with a not guilty, you’d have to look at Shannon Sargent and say, “I don’t believe you.” And Kristen Oliver, “I don’t believe you.” And Corrine, “I don’t believe you.” You have to tell the Oakland County Sheriffs Department, ‘You know what? I’d be okay with my daughter being stopped by him at three in the morning.”
I ask that you return the right verdict, and that’s guilty as charged on all three counts.
Thank you.
(JA 432 (emphasis added).) The prosecutor clearly intended this statement to appeal to the passions and prejudices of the jurors. By placing in the jurors’ minds the thought of their own daughters being stopped by a police officer accused of committing a sexual crime, the prosecutor made it less likely that the jurors would decide the case on the basis of the evidence before them and more likely that they would convict Smith because of their subjective fears about sexual predation. See Gall v. Parker, 231 F.3d 265, 315 (6th Cir.2000) (granting relief based on “egregious” misconduct where prosecutor urged jurors not to “turn [the defendant] loose *333 on society”); Bates v. Bell, 402 F.3d 635, 642 (6th Cir.2005) (granting habeas relief where prosecutor warned jurors that a decision not to execute defendant was equivalent to “passively issupng] a warrant of execution for someone else”). The majority opinion falls short in that it fails to recognize the potentially serious harm presented by the prosecutor’s comment. I see little difference between the “I’d be okay with my daughter being stopped by him” comment and those comments that contributed to grants of relief in Gall v. Parker and Bates v. Bell.
Second, the prosecutor’s comment to the jury that “[t]his is not going after a person who’s not guilty ... [;] [t]hat would be every prosecutor’s worst nightmare,” (JA 419), was improper because it expressed the prosecutor’s own belief that Smith was guilty. See Carroll, 26 F.3d at 1384-85 (“[Statements of personal belief on the part of a prosecutor may have a ‘devastating impact’ on a jury.” (quoting United States v. Bess, 593 F.2d 749, 755 (6th Cir.1979))). Statements by the prosecutor carry “the imprimatur of the Government and may induce the jury to trust the Government’s judgment rather than its own view of the evidence.” United States v. Young, 470 U.S. 1, 18-19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The jury could also infer from such statements that the prosecutor knows of additional evidence of the defendant’s guilt that was not presented at trial. See id.; Gall v. Parker, 231 F.3d at 312. The prosecutor’s task is to put on evidence and argue inferences from that evidence; her “personal opinion has no place at trial.” Carroll, 26 F.3d at 1384 (internal quotation marks omitted). .
The majority excuses this comment because it was arguably a response to a statement by the defense counsel that he wished the jury had the option of affirmatively proclaiming Smith “innocent,” rather than merely “not guilty.” However, even if the prosecutor’s “worst nightmare” comment is viewed as a response to the defense’s argument, this does not render the comment permissible.[2] Prosecutorial vouching is forbidden, even in response to a credibility challenge by the defense. See United States v. Collins, 78 F.3d 1021, 1040 (6th Cir.1996) (prosecutor’s statement of personal belief was improper even though it came in response to defense argument; however, the fact that the statement was a response did minimize its prejudicial effect).
Third, the prosecutor improperly stated that if Sargent had testified that Smith penetrated her during the search, “we would believe her.” (JA 426.) Again, the majority states that this was only a response to defense counsel’s argument that Sargent’s memory loss made her not credible, but it bears repeating that a prosecutor is not permitted to vouch personally for a witness’s veracity, even in response to a credibility challenge by the defense. The prejudicial effect of this particular comment, however, is small. It is phrased as a hypothetical, stating only that the prosecutor “would” believe Sargent “if’ she *334 changed her story. At most, this comment might have led the jury to infer that the prosecutor generally found Sargent to be a credible person. On the other hand, the jury might also have found the comment to undercut the prosecution’s own credibility, since the comment suggests that the prosecutor would indiscriminately believe Sargent’s story, regardless of which version she asserted. This comment did not have significantly affect the trial overall.
Fourth, the prosecutor stated “[sjeriously, why is [defense counsel] making a 19-year-old girl cry [on the stand]?” (JA 421.) Prosecutors should not level personal attacks against defense counsel, and trial courts should not countenance such conduct. See Carter, 236 F.3d 777, 785 (6th Cir.2001). However, the likelihood that this statement significantly impacted the trial is small, as the prosecutor merely accused the defense counsel of being insensitive, and, in any case, the jurors witnessed the defense counsel’s conduct themselves and could form their own impressions of it. Cf. id. (prosecutor repeatedly accused defense counsel of lying to the jury).
B. The misconduct did not deprive Smith of a fair trial
The next step in the analysis is to determine whether these instances of misconduct were flagrant. Under the first prong of the test, only two of the prosecutor’s comments had real potential to “mislead the jury and prejudice the defendant.” Boyle, 201 F.3d at 717. The less serious of the two was the prosecutor’s remark suggesting that she personally believed the defendant was guilty. While plainly improper, this comment was not particularly egregious: it did not suggest to the jury that the prosecutor knew of additional evidence of guilt that was not available to them, and, as the majority points out, its prejudicial effect was lessened by the fact that it was a response to a comment by the defense counsel. On its own, this comment did not mislead the jury and likely did not seriously prejudice the defendant. However, it could certainly contribute to a finding that, cumulatively, the misconduct amounted to a due process violation. See, e.g., Bates, 402 F.3d at 646 (prosecutor’s vouching among factors contributing to grant of habeas based on misconduct).
The more misleading and prejudicial instance of misconduct was the “I’d be okay with my daughter being stopped by him” comment, which not only was a patent appeal to the juror’s fears and prejudices, but had a particularly strong potential to influence the jury because it was the last piece of argument they heard before deliberating. The majority is correct that this error was lessened by the district court’s subsequent jury instructions stating that the lawyers’ arguments are not evidence, and that the jury should “should only accept things the lawyers say that are supported by the evidence or by your own common sense” and should “think about each witness and each piece of evidence and whether you believe them ... [and] decide whether the testimony and evidence you believe proves beyond a reasonable doubt that the [defendant] is guilty.” (JA 433, 435.) However, curative instructions do not always eradicate the harm caused by a prosecutor’s inappropriate statement. See, e.g., United States v. Payne, 2 F.3d 706, 715 (6th Cir.1993) (reversing conviction, on direct appeal, where curative instructions did not eradicate harmful effect of misconduct); Solivan, 937 F.2d at 1157 (same). The instructions in this case, while certainly helpful, did not address directly the harm posed by the “I’d be okay with my daughter being stopped by him” comment, which was not that the jury would mistake it for evidence, but that the jury would allow its fears and passions to *335 influence its decision instead 0/limiting its consideration to the evidence in the record. Thus, with respect to the prosecutor’s “I’d be okay with my daughter being stopped by him” comment, the first prong leans in favor of finding the misconduct to be flagrant.
Under the second prong, the misconduct was isolated and not extensive. There were several minor instances of misconduct, but only one major instance. The district court incorrectly found that this prong weighed in favor of flagrancy because the district court was mistaken about the number of instances of misconduct that had occurred. However, as suggested above, the fact that the misconduct was isolated to one or two remarks is merely one consideration and is not determinative. Under the third prong, the “I’d be okay with my daughter being stopped by him” comment was clearly deliberate. The prosecutor intended it to be the final idea planted in the minds of the jurors before they began deliberating.
Under the fourth prong, the total strength of the evidence against Smith was strong but not overwhelming. The evidence consisted primarily of Sargent’s testimony, buttressed by the testimony of two similar-acts witnesses, Oliver and Stein-brenner, who also claimed that Smith inappropriately sexually touched them during searches of them. If the jury believed these witnesses rather than Smith, the evidence against Smith was strong, but there was no physical evidence or third-party-witness account to corroborate Sargent’s claims. Sargent’s boyfriend, Peter Mari-nelli, testified that Smith took Sargent to his police car for about fifteen minutes and required Marinelli to wait in his own car. Marinelli did not have a clear view of police car because, as Smith admitted at trial, Smith intentionally adjusted Marinel-li’s car mirror to prevent him from being able to see Smith as he questioned Sargent.
Cases involving alleged sexual misconduct often turn on the relative credibilities of the defendant and the prosecuting witness with little other evidence for the jury to consider. Martin v. Parker, 11 F.3d 613, 616-17 (6th Cir.1993). Like the district court, I am mindful of the fact that it is particularly important in such cases to ensure that juries base their decisions on the evidence before them, not on prejudices and fears raised by inappropriate prosecutorial conduct. See Washington v. Hofbauer, 228 F.3d 689, 708 (6th Cir.2000); Martin, 11 F.3d at 616-17. Accordingly, though I find that this prong is close to neutral, it cuts slightly in favor of Smith.
In sum, the misconduct in this case boils down to one highly inappropriate comment that was deliberately calculated to inflame the fears and passions of the jurors, as well as one other potentially prejudicial comment about the prosecutor’s personal belief that the defendant was guilty. I find this to be a much closer case than the majority. The misconduct occurred in the type of case in which it is particularly important that such passions not be the basis for the jury’s decision. Furthermore, in a case on direct appeal involving a single instance of misconduct similar to the “I’d be okay with my daughter being stopped by him” comment, we held that a new trial was required, even though the trial judge attempted to cure the misconduct with an instruction to the jury. See Solivan, 937 F.2d at 1157. Finally, at least two prongs of the flagrancy analysis, and arguably three, point in favor of finding the prosecutor’s misconduct to be flagrant.
Nonetheless, I agree with the result reached by the majority because I cannot say that the prosecutor’s misconduct so infected Smith’s trial with unfairness as to *336 deprive him of due process. The presentation of evidence to the jury proceeded properly, and Smith was able to testify and cross-examine the prosecution’s witnesses free of any misconduct. I am persuaded that the jury based its decision on the evidence before it, not on the prosecutor’s inappropriate rhetoric in argument. The jury presumably followed the judge’s instructions, which, while not perfect, did convey that the jury was required to base its decision on the evidence before it, not on the lawyers’ remarks. While the prosecutor’s error was a serious one, Smith received a fair trial and was not deprived due process.
III. CONCLUSION
For the foregoing reasons, I concur in the result reached by the majority and thus would reverse the judgment of the district court granting the writ of habeas corpus and remand for consideration of Smith’s remaining claims.

. We have also said, however, that the prosecutor's intent is irrelevant: "the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.” Hutchison v. Bell, 303 F.3d 720, 750 (6th Cir.2002).

. At times, questionable prosecutorial comments may be proper because they are "made in response to the argument and strategy of defense counsel.” Byrd v. Collins, 209 F.3d 486, 535 (6th Cir.2000). For example, I agree with the majority that after Smith’s counsel argued that Sargent's alleged repression of the memory of penetration was "going to be one for the psychology books” (JA 400-01) because it was not the type of situation in which people typically suppress memories, it was not misconduct for the prosecutor to respond: "How about it’s common in sexual assault victims to repress the most significant thing that happened ... ?” (JA 425). Although Smith claims that the prosecutor committed misconduct by arguing facts not in the record, the prosecutor was reasonably reacting to an argument strategy initiated by the defense.