NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0485n.06

No. 13-1325

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Jul 07, 2014*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| RUDY THOMAS, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| KENNETH McKEE, | ) |
| | ) |
| Respondent-Appellee. | ) |

---

BEFORE: BOGGS and KETHLEDGE, Circuit Judges; and RESTANI, Judge.*

BOGGS, Circuit Judge: Rudy Thomas, a Michigan prisoner serving a life sentence for first-degree premeditated murder, appeals the district court's denial of his petition for a writ of habeas corpus. For the reasons given below, we affirm.

I

Thomas was convicted on March 5, 2008, by a jury in the Wayne County Circuit Court of first-degree premeditated murder and possession of a firearm during the commission of a felony, violations of M.C.L.A. 750.316(1)(a) and 750.227b, respectively. He was sentenced to a two-year term for the firearm violation followed by mandatory life in prison. Thomas appealed his conviction to the Michigan Court of Appeals, advancing four claims: 1) insufficiency of the evidence to support a first-degree murder conviction, 2) ineffective assistance of counsel, 3) prosecutorial misconduct and 4) the impermissible admission into evidence of a series of

---

* The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

1

recorded telephone calls made by Thomas while in jail. The Michigan Court of Appeals affirmed.

On habeas review, a state court's findings of fact are accorded a presumption of accuracy. 28 U.S.C. § 2254(e)(1). The facts of this case, as found by the Michigan Court of Appeals, are as follows:

> The evidence at trial indicated that the victim was shot twice in the head while sitting inside a parked SUV during the afternoon. Solomon Israel, a passerby, heard someone in the SUV make a high-pitched plea to "stop" shortly before hearing gunshots. Moments later, Israel saw defendant get out of the passenger side of the SUV with a firearm in his hand, tuck the firearm into his waistband, and nonchalantly leave the area. There was testimony that the victim's injuries were consistent with first being shot upward in the chin and, after falling over, being shot a second time from close range in the top of the head. The evidence that the victim pleaded with the shooter to "stop" before being shot, that the victim was shot a second time in the head from close range after falling over from the first shot, and defendant's casual demeanor after the shooting, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find that there was "sufficient time to . . . take a second look" and to support a finding of premeditation and deliberation for first-degree murder.

*People v. Thomas*, No. 284982, 2010 WL 1726736, at *2 (Mich. Ct. App. Apr. 29, 2010).

After the Michigan Court of Appeals affirmed his conviction, Thomas applied to the Michigan Supreme Court for leave to appeal, again raising the same four claims and adding the additional claim that he should have been afforded his choice of appellate counsel before the Michigan Court of Appeals. On November 22, 2010, the Michigan Supreme Court denied his application for leave to appeal, ending direct review of his conviction.

Within a year, on November 18, 2011, Thomas filed a petition for a writ of habeas corpus the United States District Court for the Eastern District of Michigan. In his petition, Thomas alleged the four claims advanced before the Michigan Court of Appeals. In a lengthy, well-reasoned opinion, the district court denied his petition for a writ of habeas corpus, finding that Thomas was not eligible for habeas relief on any of his claims. The district court did, however,

2

grant a certificate of appealability (CoA) and leave to proceed in forma pauperis. Thomas timely appealed.

## II

The district court's denial of a petition for a writ of habeas corpus is reviewed de novo. *See Tucker v. Palmer*, 541 F.3d 652, 655 (6th Cir. 2008). This habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because it was filed after AEDPA's effective date in 1996. *See Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999). AEDPA permits federal courts to grant a writ of habeas corpus to prisoners in state custody only if the state-court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

28 U.S.C. § 2254(d).

State-court decisions are "contrary to . . . clearly established federal law" when "the state court applies a rule that contradicts the governing law" articulated by the Supreme Court, or when a state court "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision yet arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state-court decision "involve[s] an unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08.

AEDPA imposes a demanding standard of review for state-court decisions. "When assessing unreasonableness, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (internal quotation marks omitted); *see Williams v. Taylor*, 529 U.S. 362, 365 (2000). Thus, under AEDPA, the issue on appeal for each of the claims advanced is: did the district court correctly determine whether the Michigan Court of Appeals applied the relevant federal law *unreasonably*.

III

On appeal, Thomas advances three of the four claims advanced before the district court: insufficiency of the evidence, ineffective assistance of counsel and prosecutorial misconduct. He has abandoned his claim that the jailhouse phone recordings were improperly admitted.

A

Thomas argues that the district court erred in finding that the Michigan Court of Appeals reasonably applied *Jackson v. Virginia* regarding his claim that the prosecution put forth insufficient evidence to convict him of first-degree premeditated murder. Under the Supreme Court's clearly established law, the question a court must ask in reviewing a habeas petition claiming insufficiency of the evidence is whether the evidence "could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Or, put another way, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

In Michigan, "[t]o show first-degree premeditated murder, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation." *People v. Gonzalez*, 664 N.W.2d 159, 163 (Mich. 2003) (internal quotation marks and alterations omitted). The time span required "between the initial thought and ultimate action should be long enough to afford a reasonable person time to take a 'second look.'" *Ibid*. The

4

time required for a "'second look' may be merely seconds or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing." *People v. Meier*, 209 N.W.2d 311, 318 (Mich. 1973). For our purposes, as long as "*any* reasonable trier of fact" could find the defendant guilty based on the evidence presented, the district court's determination that the Michigan Court of Appeals did not unreasonably apply federal law must be affirmed and habeas relief denied.

The Michigan Court of Appeals pointed to three major lines of evidence, each of which, under the law of Michigan, supports a finding of premeditation and therefore Thomas's conviction for first-degree murder. First, the prosecution's principal witness, Solomon Israel, testified that he heard pleas from inside the car to "stop" before hearing the gunshots. Second, evidence was introduced that Thomas left the crime scene with a casual demeanor. Third, the victim was killed by means of multiple gunshots to the head, including one gunshot to the top of the head at very close range. Under the law of Michigan, evidentiary submissions similar to those presented in Thomas's trial have been held to demonstrate premeditation. Presented with this evidence, a rational trier of fact could have found Thomas guilty beyond a reasonable doubt. The district court was correct to find that the Michigan Court of Appeals did not apply *Jackson* unreasonably. We affirm the district court and deny habeas relief on the insufficiency claim.

B

Thomas's second argument on appeal is that the district court erred in finding that the Michigan Court of Appeals reasonably applied the standards of *Strickland v. Washington* in assessing his claim of ineffective assistance of counsel. Under clearly established federal law, in order to demonstrate ineffective assistance of counsel, a petitioner must satisfy a two-part test. First, he must show that his counsel's performance was "deficient" by showing "that counsel

5

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he must show "that the deficient performance prejudiced the defense" through errors that were "so serious as to deprive the defendant of a fair trial." *Ibid.* In order to make such a showing, the prisoner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The two-step showing is required except in cases in which the defendant demonstrates that his counsel wholly fails to put the prosecution's case to "meaningful adversarial testing" for example, when the counsel's incompetence has effectively "denied the right of effective cross-examination" *United States v. Cronic*, 466 U.S. 648, 659 (1984). Under those limited circumstances, prejudice is presumed; otherwise it must be demonstrated. Again, given the standard in habeas actions under AEDPA, the district court's inquiry is limited strictly to the question of whether or not the Michigan Court of Appeals applied the *Strickland* standard unreasonably; the district court is not empowered to apply *Strickland* directly in order to make its own, independent determination.

Thomas advances several bases to support his ineffective-assistance-of-counsel claim. First, he claims that his lawyer was so unprepared as to have effectively denied him counsel altogether. Such a claim does not require a showing of prejudice if the petitioner can make a successful initial demonstration of complete unpreparedness. *Cronic*, 466 U.S at 659. Despite Thomas's claims on appeal that "the trial record indisputably shows . . . obvious lack of preparation," the record is in fact replete with evidence that his attorney was, at the very least, minimally prepared. (Pet'r's Br. at 30). As the district court pointed out, Thomas's lawyer

6

participated actively in *voir dire*, attempted to impeach the prosecution's witnesses, objected to the prosecutor's reference to the phone calls during opening arguments, conducted a vigorous cross-examination both of the prosecution's primary witness and of the police witnesses and delivered an effective closing argument. We agree with the Michigan Court of Appeals that, "[t]here is simply nothing in the record to support defendant's assertion that defense counsel was unprepared to try the case."

Second, Thomas argues that he received ineffective assistance of counsel because his lawyer failed to object to various "inflammatory" comments by the prosecutor during opening statements and because his lawyer "sat silently and failed to object" to the admission of the jailhouse telephone recordings. (Pet'r's Br. at 30, 33). As to the claim of prejudicial statements, Thomas argues that it was improper for the prosecutor to tell the jury that "Mr. Israel doesn't want to be here and . . . he's scared but he knows the right thing to do . . . ." Thomas also took issue with the prosecution's characterization of the murder as "a stone cold execution." The Michigan Court of Appeals found that the prosecutor's comments were "fair comments on the evidence that would be presented at trial" and that the prosecutor's "characterization of the shooting as an 'execution' was not improper." The lawyer's failure to object to legitimate statements by the prosecution does not constitute the kind of error that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Even if the statements were improper, Thomas has shown no prejudice as a result of his lawyer's failure to object and nothing in Thomas's claim demonstrates prejudice "so serious as to deprive the defendant of a fair trial." *Ibid*.

Third, as to Thomas's claim that his attorney did not object to the introduction of the phone recordings, the record demonstrates otherwise. Thomas's lawyer objected to the

recordings when they were introduced in the prosecution's opening statement: "Your Honor, I would object to the prosecutor putting on his case on opening statement." Because his lawyer objected, Thomas cannot make out a claim for ineffective assistance of counsel based on a failure to object. Furthermore, the Michigan Court of Appeals ruled that the evidence of the phone recordings was properly admitted. Thus, even if Thomas had a legitimate claim of deficient representation by his attorney, he would be unable to demonstrate the requisite prejudice in this case. Failure by an attorney to resist the introduction of admissible evidence does not amount to prejudice and therefore cannot satisfy the second part of *Strickland's* two-part test.

Finally, Thomas claims ineffective assistance of counsel based on his lawyer's allegedly unprofessional conduct. This conduct took two forms. First, his lawyer supposedly acted in a "bizarre, unprofessional" manner by "attack[ing] the witness" during cross-examination. (Pet'r's Br. at 38). Second, there was an incident during the proceedings when the wife of Thomas's lawyer, an attorney who was not participating in Thomas's trial, inappropriately raised an objection from the courtroom gallery.

As to the first claim, that his lawyer was too aggressive, it is true that his lawyer was threatened with contempt. Thomas argues that "if a trial judge diminishes counsel in front of a jury it prejudices the accused in the eyes of a jury and deprives the defendant of a fair trial." (Pet'r's Br. at 41). When this argument was raised before the Michigan Court of Appeals, it was rejected. The Michigan Court of Appeals found that although the record showed "that defense counsel became argumentative with Israel at times . . . it does not reveal that these instances . . . impacted defense counsel's presentation of a vigorous defense." The Michigan Court of Appeals went on to state that the aggressive questioning of Israel was "was not

8

objectively unreasonable given that Israel was the principal witness" and stated that, in addition, the "defendant has not explained how counsel's conduct prejudiced him." The district court was correct to find that the Michigan Court of Appeals reasonably applied *Strickland* because neither part of the two-part test was satisfied. First, because "[o]verzealousness of counsel does not amount to the ineffective assistance of counsel," and second, "[b]ecause petitioner has failed to show how counsel's . . . argumentative style prejudiced his defense, he is not entitled to habeas relief . . . ."

As to the second issue, that Thomas suffered ineffective assistance of counsel due to his lawyer's wife's objection, the district court was again correct to find that the Michigan Court of Appeals did not unreasonably apply *Strickland*. As the Michigan Court of Appeals found, the wife's objection "was clearly improper" but the trial judge nevertheless "addressed the matter by ordering defense counsel's wife to leave the courtroom." This single incident does not amount to "errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Additionally, as the Michigan Court of Appeals found, Thomas "has not explained how he was prejudiced," and therefore he cannot satisfy the second part of *Strickland*.

The district court was correct to find that the Michigan Court of Appeals did not unreasonably apply *Strickland*. We affirm the district court and deny habeas relief on the ineffective-assistance-of-counsel claim.

C

Finally, Thomas advances a claim of prosecutorial misconduct. The alleged incidents of misconduct boil down to the prosecutor's "ambush" of Thomas by admission of the jailhouse

9

phone recordings and to a series of what Thomas terms "intentionally inflammatory" statements by the prosecution during his opening and closing arguments. (Pet'r's Br. 52).

We review a habeas petition alleging prosecutorial misconduct deferentially. In a state habeas case, "the standard to be applied to claims of prosecutorial misconduct is whether the conduct was so egregious so as to render the entire trial fundamentally unfair." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotation marks omitted). When the prosecutorial misconduct alleged consists of inappropriate statements at trial, we grant relief when "the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). We employ the two-step test set forth in *United States v. Carroll* to determine if a prosecutor's comments are sufficiently prejudicial as to require habeas relief. 26 F.3d 1380 (6th Cir. 1994). "[W]e first determine whether the challenged statements were indeed improper. Upon a finding of such impropriety, we then look to see if they were flagrant and warrant reversal." *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (quoting *Carroll*, 26 F.3d at 1385) (internal quotation marks and citations omitted). Flagrancy itself is determined by a balancing test involving four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Carroll*, 26 F.3d at 1385.

First, the prosecution did not "ambush" Thomas with the jailhouse phone recordings. The Michigan Court of Appeals entertained Thomas's claim that they were improperly raised in the prosecutor's opening argument and rejected that claim, finding that the references to the phone calls "were designed to show that he intended to prove during trial that the principal

10

witness, Israel, had been intimidated." The Michigan Court of Appeals went on to state that since the "evidence was properly admitted," the prosecutor "was also free to comment on" it. The district court was correct to find that there was nothing improper in the prosecutor's mention of the recordings because the prosecutor was "simply setting forth the evidence he would present in his case." The references to the recordings were not improper, and Thomas fails at the first step of *Carroll* analysis.

Further, the Michigan Court of Appeals found that the prosecutor's other comments did not deprive Thomas of a fair trial. All but one of the complained-of comments clearly fail at the first step of the *Carroll* test. First, the Michigan Court of Appeals found no impropriety in the prosecutor's "inflammatory" comments. For example, his reference to the shooting as an "execution" was permissible because "execute" in the correct context is little more than a synonym for "murder." The Michigan Court of Appeals similarly found no impropriety in the prosecutor's reference to the "high pitch scream" mentioned in his closing argument.

The only comment that may have been improper was the prosecutor's explanation during closing arguments, without having introduced supporting evidence during the trial, that the term "to holler," which appeared in one of the recorded phone calls, meant "to intimidate." The Michigan Court of Appeals, without directly finding the comment improper, did find that the prosecutor's reference did not deprive Thomas of substantial rights and that, given the other evidence presented at trial and the judge's instructions, Thomas "was not denied a fair trial."

In reviewing the Michigan Court of Appeals, the district court determined that the prosecutor's explanation of slang was indeed improper. Assuming that the district court was correct, Thomas still fails at the second step of *Carroll*. Of the second step's four factors, three weigh in favor of the prosecution. Admittedly, the first factor, whether the remarks would

11

mislead the jury and prejudice the defendant, perhaps weighs for Thomas since there was no supporting evidence for the prosecutor's explanation that "to holler" meant "to intimidate." The second factor, however, weighs heavily in favor of the prosecution since this was a single, isolated example of the prosecution explaining the meaning of a slang term in his closing argument. The third factor weighs in favor of the prosecution because there is nothing in the record to indicate that any error was intentional; the prosecution was most likely taking too much license in summing up the evidence presented at trial. Finally, the fourth factor weighs heavily in favor of the prosecution. As stated by the Michigan Court of Appeals when it rejected Thomas's identical argument below, the prosecutor's explanation of "to holler" did not deprive Thomas of his substantial rights because "Israel had already testified during trial that the defendant's associate had approached him in a daunting manner, and the jail recordings further indicated that the defendant's associates had seen and approached the witness." In other words, the evidence properly introduced was strong, and the effect of the prosecutor's comments was minimal. The prosecutor's comments certainly were not "so egregious as to render the entire trial fundamentally unfair." *Caldwell*, 181 F.3d at 736 (6th Cir. 1999).

The district court was correct to find that the Michigan Court of Appeals reasonably applied clearly established federal law. We affirm the district court's denial of habeas on the prosecutorial-misconduct claim.

IV

For the reasons stated above, we AFFIRM the district court's denial of Thomas's petition for a writ of habeas corpus.

12