**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0116n.06

**No. 10-2674**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Jan 31, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FRANCISCO RIVERA-HIDALGO, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Francisco Rivera-Hidalgo pled guilty to being an illegal alien in possession of a firearm, drug trafficking, and possession of firearms in furtherance of a drug trafficking crime. He received concurrent sentences of eighty-four months' imprisonment for the two drug trafficking counts, which were six months longer than the maximum recommended sentences under the Sentencing Guidelines. Rivera-Hidalgo argues on appeal that his sentence was procedurally and substantively unreasonable because the district court relied on clearly erroneous facts, improperly "double counted" his possession of firearms, and failed to explain the apparent inconsistency between its award of a reduction for acceptance of responsibility and the imposition of a sentence that included an upward variance partially based on the conclusion that Rivera-Hidalgo had not fully acknowledged his role in the offense. For the reasons that follow, we affirm the sentence imposed by the district court.

1

I.

On January 28, 2010, police executed a search warrant at Rivera-Hidalgo's residence in Wyoming, Michigan, where officers located a 9mm handgun, a 20-gauge shotgun, photographs of Rivera-Hidalgo brandishing weapons, eleven pounds of marijuana, and a small amount of powder cocaine. Officers also confiscated $37,450 in cash, which was found hidden in a toilet tank in the basement. During the search officers discovered documents indicating that Rivera-Hidalgo was the primary lessee of another residence. Officers conducted a warrant search of this second property and seized approximately two kilograms of powder cocaine and 150 kilograms (330 pounds) of marijuana. Officers also discovered four scales, inositol, several large coolers, packing material, and numerous boxes of plastic bags.

Rivera-Hidalgo is a citizen of Mexico and had no legal authority to reside or be present in the United States. His immigration record revealed that he had been returned to Mexico on fourteen occasions between September 1999 and May 2001.

Rivera-Hidalgo was indicted and charged with: (1) being an illegal alien in possession of firearms, in violation of 18 U.S.C. § 922(g)(5)(A); (2) possession of 100 kilograms or more of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (3) possession of 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (4) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On July 30, 2010, he pled guilty to all four counts.

During his plea hearing, Rivera-Hidalgo admitted that he had purchased the marijuana that had been seized by the police. He further admitted that he had intended to sell the marijuana for a

profit. When asked about the cocaine, he admitted the same details; he had purchased the cocaine with the intent to sell it for a profit. He also admitted that he was aware that he was in the country illegally while in possession of two firearms. Rivera-Hidalgo stated that he kept the firearms in his home for protection and admitted that one of the reasons he had the guns was to protect himself if someone tried to steal his drugs.

The guilty plea was accepted by the district court, and a Presentence Investigation Report ("PSR") was prepared. Rivera-Hidalgo told the probation officer that "an individual or group of persons offered him money to store and sell marijuana and powder cocaine." He reported that he received $20 per pound of stored marijuana and $50 per pound of sold marijuana but that he received no extra money for storing or selling the powder cocaine. Rivera-Hidalgo declined to discuss where and from whom he purchased the drugs or the purchase price of the drugs. He also stated that he had purchased the pistol "approximately eight months before his arrest in the instant offense" and had purchased the shotgun "two or three days before his arrest in the instant offense."

The PSR indicated Rivera-Hidalgo had a criminal history category of I and showed his total offense level was 26, which included a two level reduction for acceptance of responsibility. It further indicated Rivera-Hidalgo's advisory Sentencing Guidelines range was sixty-three to seventy-eight months imprisonment on Counts One, Two, and Three, and sixty months on Count Four, which was to be served consecutively to the first three counts. Neither party objected to these calculations or any aspect of the PSR.

At sentencing, the district court denied Rivera-Hidalgo's request for a downward variance from the statutory minimum sentence of 120 months' imprisonment. After hearing from the parties,

the district court proceeded to consider the 18 U.S.C. § 3553(a) factors. The court concluded that "this is an offense well above the midline of offenses on a one-to-ten scale of seriousness because of the amount of drugs and money found . . . [and] because of the presence of weapons which always ups the anty [*sic*]." The district court imposed a sentence of seventy-two months' imprisonment on Count One, and sentences of eighty-four months' imprisonment on Counts Two and Three. All three sentences would be served concurrently. This was a six-month upward variance from the seventy-eight-month maximum sentence recommended under the Sentencing Guidelines for Counts Two and Three. The court then imposed a sixty-month consecutive sentence on Count Four for a total sentence of 144 months' imprisonment. At the conclusion of sentencing, the court asked if there were "any legal objections, any reasons other than already on the record why sentence should not be imposed as I have announced it . . . ?" Defense counsel objected "to the sentence that's outside the guidelines."

## II.

"Post-*Booker*, [this court reviews] a district court's sentencing determination under a deferential abuse-of-discretion standard, for reasonableness." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (internal quotation marks and citation omitted). This court reviews the district court's sentencing determination for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any

deviation from the Guidelines range." *Id.* Review of the substantive reasonableness of a sentence takes into account the totality of the circumstances. *Id.* For sentences outside the Guidelines range, this court "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Rivera-Hidalgo implicitly concedes that his counsel's objection to a sentence that was "outside the guidelines" was too vague to be considered an objection to the district court's sentencing procedure. *See United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (holding that a party must object with a reasonable degree of specificity that adequately apprises the trial court of the basis for the objection). Because no adequate objection was raised to the district court's findings in support of the sentencing decision, we conduct plain error review of the issue of whether the defendant's sentence was procedurally reasonable. *See United States v. Simmons*, 587 F.3d 348, 353–54 (6th Cir. 2009).

"To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) (internal quotation marks and citation omitted). This court has recognized that "[t]he plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994) (internal quotation marks and citations omitted).

III.

Rivera-Hidalgo argues that the district court's sentencing decision was procedurally unreasonable and that the district court committed plain error because it relied on clearly erroneous facts, improperly "double counted" his possession of firearms, and failed to explain the inconsistency between its award of a reduction of his offense level for acceptance of responsibility and the imposition of a sentence with an upward variance partially based on its conclusion that Rivera-Hidalgo had not fully acknowledged his role in the offense.

A.

Rivera-Hidalgo claims that the district court's decision to impose a sentence six months above the Guidelines range on Counts Two and Three was unsupported by facts in the record and, instead, was based on mere speculation regarding Rivera-Hidalgo's possible involvement in drug trafficking activities beyond the conduct charged in the instant case. While the district court did conclude that the full extent of Rivera-Hidalgo's involvement in drug trafficking was unclear and that he had been less than completely forthcoming about his involvement, this conclusion was not mere speculation, but rather was supported by circumstantial evidence contained in the record. Accordingly, we find that the district court did not commit plain error.

First, the district court correctly noted that there were inconsistences between what Rivera-Hidalgo admitted at his plea hearing and what he later told the probation officer. At the plea hearing, Rivera-Hidalgo admitted that he had purchased both the marijuana and cocaine with the intent to sell them for a profit. He later told the probation officer that he had been offered money to store and sell marijuana and cocaine. He described to the probation officer a kind of storage and consignment

relationship for the marijuana, which was inconsistent with his earlier statement at the plea hearing that he had purchased the marijuana outright. He also admitted to the probation officer that he received no additional money for storing or selling cocaine, which is consistent with his plea hearing testimony but inconsistent with the statement made in the previous paragraph of the PSR. These inconsistencies supported the district court's conclusion that Rivera-Hidalgo's story "seemed to flop around a little bit in terms of the transcript of the plea . . . ."

Second, the district court stated at the beginning of the sentencing hearing that "it's not really quite clear what his role was in this whole situation." Instead of taking issue with the court's conclusion that Rivera-Hidalgo had not been entirely forthcoming in describing the extent of his involvement in drug trafficking, defense counsel sought to explain his client's reticence to fully explain his role—claiming that Rivera-Hidalgo feared for the safety of his family living in the Grand Rapids area and in Mexico—and thereby acknowledged the validity of the court's conclusion that Rivera-Hidalgo's role was unclear.

The district court did commit a slight misstep when it stated that the Rivera-Hidalgo's "claim that he was just storing drugs" was not credible. Rivera-Hidalgo never claimed he was *just* storing drugs. Rivera-Hidalgo argues that the district court's mistake constitutes clear error which renders his sentence procedurally unreasonable. While this error might be obvious or clear, Rivera-Hidalgo has not shown that it also affected his substantial rights or "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Blackwell*, 459 F.3d at 771 (internal quotations omitted). Just before making this small mistake, the district court stated: "but . . . it's fair to say that he has clearly admitted a significant role in dealing in a large amount of drugs," showing that the

7

court understood that Rivera-Hidalgo had admitted to selling drugs as well as storing them.  More importantly, far from being "central" to the sentencing decision as Rivera-Hidalgo claims, this small error was only one factor among many that led the district court to conclude that Rivera-Hidalgo had been less than forthright in explaining his role in drug trafficking.  Furthermore, Rivera-Hidalgo's lack of forthrightness was only one factor that led the court to determine that a sentence slightly outside the Guidelines range was warranted.  The district court also considered statutory factors such as the seriousness of the crime, the need to punish, the need to deter, and the need to protect the public in making its sentencing decision.

Rivera-Hidalgo also claims that the court relied on "nothing more than speculation" in concluding that it had only "seen the tip of this crime."  But there is circumstantial evidence in the record that supports the conclusion that this was not the first time Rivera-Hidalgo possessed marijuana and cocaine with the intent to distribute them.  Rivera-Hidalgo admitted that "he purchased the pistol approximately eight months before his arrest," and the pistol and shotgun "had been purchased for protection and in defense of the drugs and money."  Rivera-Hidalgo did not have a criminal record but had been deported fourteen times in a year-and-a-half span.  In addition to the large quantity of drugs seized, officers also seized scales, cutting agents, several large coolers, and packaging materials.  Rivera-Hidalgo had only a spotty employment record and admitted to committing the instant crimes to send money to his family in Mexico.  Based on this evidence, it was not unreasonable for the district court to conclude that Rivera-Hidalgo was likely involved in drug trafficking beyond the crimes charged.  At minimum, Rivera-Hidalgo has failed to show an "error

. . . so plain that the trial judge and prosecutor were derelict in countenancing it." *Carroll*, 26 F.3d at 1383 (internal quotation marks and citations omitted).

B.

Rivera-Hidalgo also argues that the district court engaged in impermissible "double counting" when it considered his possession of firearms when evaluating the Section 3553(a) factors with respect to the drug trafficking charges. He asserts that the district court "relied heavily on the fact that [he] possessed firearms during the time he possessed the drugs," in imposing a sentence six months above the advisory Guidelines range for Counts Two and Three and that this was impermissible because the district court also imposed a 60-month consecutive sentence for Count Four—possession of firearms in furtherance of drug trafficking.

Rivera-Hidalgo cites our decision in *United States v. Farrow*, which held "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways," in support of his argument that he is being improperly punished twice for the same conduct. 198 F.3d 179, 193 (6th Cir. 1999) (citation omitted). The double counting in *Farrow*, however, was used to establish both an elevated base offense level and a four-level enhancement under the Sentencing Guidelines. *Id*. at 188. The court noted that while not all instances of double counting are impermissible, such as when there is evidence that Congress intended the conduct to be counted both for setting an elevated base offense level and for applying sentencing enhancements, the double counting within the Sentencing Guidelines that occurred in *Farrow* was improper. *Id*. at 194–95.

Double counting within the Sentencing Guidelines did not occur in this case, however. The drug trafficking guideline provides for a two-level enhancement for the possession of a firearm. U.S.S.G. § 2D1.1(b)(1). The parties agreed that this two-level enhancement should not be applied to the Guidelines calculation for the drug trafficking charges in this case, since this would indeed constitute impermissible double counting in light of Rivera-Hidalgo's firearms-related sentence on Count 4.

Instead, Rivera-Hidalgo seeks to extend the holding of *Farrow* to cover not only double counting within the Sentencing Guidelines but also "double counting" that occurs when a district court considers conduct addressed in certain counts (possession of firearms) while weighing the Section 3553(a) factors for other counts (drug trafficking). Rivera-Hidalgo cites no cases in which the district court's ability to consider all the relevant factors under Section 3553(a) for a particular offense was so limited. Indeed, we have not prohibited district courts in other cases from considering the characteristics of other offenses committed by the defendant when addressing the § 3553(a) factors for a separate offense. *See, e.g., United States v. Jennings*, 407 F. App'x 20, 22 (6th Cir. 2011) (holding that there was no impermissible "double counting" of the defendant's prior convictions, which had given him criminal history points under the Sentencing Guidelines, when the court considered the length of his previous sentences in fashioning a sentence that would "promote respect for the law"). We find that the district court committed no error when it considered Rivera-Hidalgo's possession of firearms in analyzing the Section 3553(a) factors and fashioning his sentence for the drug trafficking counts—Counts Two and Three.

C.

Rivera-Hidalgo further argues that the district court failed to explain the apparent inconsistency between granting a two-level reduction for acceptance of responsibility and imposing a sentence six months above the maximum recommended sentence under the Guidelines based, in part, on a conclusion that Rivera-Hidalgo was "unwilling to clear up what his role is in this case." He asserts that the failure to explain this inconsistency precludes meaningful appellate review and is a significant procedural error that warrants remand for resentencing.

In support of his argument, Rivera-Hidalgo cites *United States v. Polson*, 343 F. App'x 88, 95–96 (6th Cir. 2009), in which this court found that the denial of safety valve relief was procedurally unreasonable because the district court did not provide a clear explanation for why the defendant was entitled to credit for acceptance of responsibility but not entitled to safety valve relief. The PSR in *Polson*, however, "recommended denying both acceptance of responsibility and the safety valve exception because of Polson's lack of truthfulness." *Id*. The *Polson* court was confused as to why the district court relied on the PSR in denying the safety valve exception but chose to disregard it with respect to the acceptance of responsibility reduction. *Id*. "If the court had explained why it granted acceptance of responsibility credit to Polson in spite of his lack of truthfulness, this Court could be more confident that the district court's findings were consistent." *Id*. at 96.

Here, the district court's findings are only superficially at odds with one another. The district court's grant of a two-level reduction for acceptance of responsibility and its evaluation of the Section 3553(a) factors were actually consistent, rendering *Polson* inapplicable. To obtain a two-level reduction for acceptance of responsibility, a defendant is "not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction". U.S.S.G. § 3E1.1,

Application Note 1(A). The Sentencing Guidelines further provide that, "[a] defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection." *Id*. The PSR indicated that Rivera-Hidalgo pled guilty to the instant offenses, expressed remorse, and openly participated in the presentence process. Based on this conduct, Rivera-Hidalgo met the minimum requirements for a two-level reduction of his offense level for acceptance of responsibility, and the district court properly granted the recommended reduction.

But the PSR also indicated that Rivera-Hidalgo declined to discuss where and from whom he purchased the drugs or the purchase price of the drugs. While this did not disqualify him from receiving the two-level reduction, this silence was one factor (among others discussed above) that led the district court to conclude that Rivera-Hidalgo had been less than completely forthright in describing his role in drug trafficking. Moreover, his lack of forthrightness was only one factor that led the court to determine that a sentence slightly outside the Sentencing Guidelines range was warranted. Thus, it was not inconsistent to grant a reduction for acceptance of responsibility and also to impose a six-month upward variance, because these decisions require the application of different standards and had different relevant inputs. Because there was no inconsistency, the district court committed no procedural error in fashioning Rivera-Hidalgo's sentence.

In summary, Rivera-Hidalgo has failed to show that the district court improperly calculated the applicable advisory Guidelines range, that it failed to consider the pertinent Section 3553(a) factors or the parties' arguments for a sentence outside the Guidelines range, or that it failed to adequately articulate its reasoning for imposing the particular sentence chosen, which included, in

this case, a sentence that deviated from the advisory Guidelines range by six months. *See United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). We find that the district court's sentencing proceeding was procedurally reasonable and that the six-month upward variance from the advisory Guidelines for Counts Two and Three did not constitute plain error.

IV.

Rivera-Hidalgo also argues that the sentences for Counts One, Two, and Three are substantively unreasonable because they were greater than necessary to comply with the statutory sentencing purposes. If a sentence is outside the Guidelines range, as is the case here, the court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

In deciding to impose sentences for Counts Two and Three that were six months higher than the maximum recommended sentence under the Guidelines, the district court expressly considered the relevant Section 3553(a) factors, including: the circumstances of the offense, the need to promote respect for the law and provide just punishment, and the need to protect the public. The district court justified its six-month upward variance in this case based on three factors: (1) the seriousness of the crime, (2) Rivera-Hidalgo's lack of forthrightness in terms of his role in this case, and (3) the need to punish, deter, and protect the public. The court also stated that it believed the recommended sentence under the Guidelines was "a little misleading" in this case when it reflected Rivera-Hidalgo's lack of any criminal history, because none of his fourteen prior illegal entries into this

country had been charged as crimes. Based on these considerations of the totality of the circumstances, the district court concluded that this was not a "heartland case" and that an upward variance was necessary to comply with the statutory purposes of sentencing. The district court did not select this sentence arbitrarily, base the sentence on impermissible factors, fail to consider relevant sentencing factors, or give an unreasonable amount of weight to any pertinent factor. *See United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010). Thus, the sentence imposed by the district court is entitled deference, and Rivera-Hidalgo has failed to show that his sentence was substantively unreasonable.

V.

For the reasons provided above, we affirm the district court judgment on the grounds that Rivera-Hidalgo has failed to establish that his sentence was procedurally or substantively unreasonable.